**WYATT INDUSTRIES, INC., Plaintiff-Appellee,**

v.

**PUBLICKER INDUSTRIES, INC.,**
**Defendant-Appellant.**

No. 28122

Summary Calendar.

United States Court of Appeals
Fifth Circuit.

Dec. 29, 1969.

Sidney Ravkind, Mandell & Wright, Houston, Tex., for appellant.

John Held, Houston, Tex., for appellee, Baker, Botts, Shepherd & Coates, P. Allan Port, Houston, Tex., of counsel.

Before THORNBERRY, MORGAN and CARSWELL, Circuit Judges.

CARSWELL, Circuit Judge:

■ This is an appeal by Publicker Industries, Inc., from a summary judgment awarded in favor of plaintiff-appellee, Wyatt Industries, Inc., in the amount of $233,052 plus interest, less the amount of $12,303 awarded to appellant, Publicker, on its counterclaim.[1] Appellant now contends that there were genuine issues of material fact in dispute, thus making summary judgment improper, and that the trial court erred in its assessment of offsetting damages and in allowing prejudgment interest. Upon a careful review of the record on appeal and the briefs submitted by the parties, we conclude that the district court's summary judgment should be affirmed with the exception of the amount allowed on the counterclaim. As to that portion, we reverse and remand with instructions to enter judgment for Publicker in the amount of $25,000 in lieu of $12,303.

The trial court found—and the interrogatories and depositions filed in this case support the finding—the following undisputed facts. Appellant, Publicker Industries, Inc., a manufacturer of commercial chemicals, purchased from a German company the right to use a synthetic process for the production of ethanol. Scientific Design, Inc., of New York, was retained by Publicker for the purpose of designing special plans for a new processing plant and obtaining bids from local fabricators. Having received a request for quotation from Scientific Design for the fabrication of a reactor, or pressure vessel, Wyatt Industries, Inc., returned a proposed quotation, wherein Wyatt set out its general conditions including a guarantee clause. Shortly thereafter, Publicker issued a purchase order purporting to accept Wyatt's bid. Attached to this purchase order was a set of general conditions which differed from those submitted by Wyatt. Wyatt

---

1. Pursuant to Rule 18 of the Rules of this Court, we have concluded on the merits that this case is of such character as not to justify oral argument and have directed the Clerk to place the case on the Summary Calendar and to notify the parties in writing. See Murphy v. Houma Well Service, 5 Cir., 1969, 409 F.2d 804, Part I; and Huth v. Southern Pacific Company, 5 Cir., 1969, 417 F.2d 526, Part I [No. 27439, 7, 1969].

accepted the purchase order subject to certain exceptions. One such exception was that the guarantee clause made a part of Wyatt's proposed quotation would control. This guarantee clause read as follows:

"Guarantee: Fabricator warrants the completed work against defective material and workmanship, exclusive of corrosion or erosion, for the period of one year from completion thereof. Its liability under this warranty shall be limited to the replacement within the aforesaid time of any defective work or material f. o. b. Fabricator's shop, and Fabricator shall be liable for no other damages or losses * * * "

The vessel was fabricated by Wyatt in accordance with plans and specifications supplied by Publicker and Scientific Design. Upon completion of fabrication, hydrostatic testing was begun in compliance with these plans and specifications and under the supervision of Publicker's agent, Mr. F. Drawdy. During the fabrication process and the later testing, Mr. Drawdy was present at the Wyatt plant and submitted regular reports to Publicker. At the time of the first test on October 3, 1967, cracks developed in the liner of the vessel and a leaking was apparent. These cracks were repaired, but further testing produced more cracks and further leaking. This prevented Wyatt from delivering the vessel to Publicker on the proposed contract date of October 20, 1967.

Because of other contractual commitments, Publicker became anxious to receive the vessel. On October 26, a meeting was held between representatives of Publicker, Wyatt and Scientific Design, whereupon Publicker instructed Wyatt to make certain additional tests, and if no leaks appeared, to repair the cracks and ship the vessel to Publicker. Final tests were conducted and, although no leakage appeared, further cracking was evident and these facts were related to Publicker. On October 31, an agreement was reached whereby the cracks would be repaired and the vessel would be shipped "as is" on the condition that Wyatt would be absolved of liability for damage claims or repair costs in excess of $25,000. This agreement was reflected by telex communication reading in part as follows,

"* * * We agree to ship this vessel on the following conditions. It is agree[d] that Wyatt Industries, Inc. liability under the contract will not exceed $25,000.00 for any damage claims or repair costs occuring in connection with this vessel as a result of failure of the copper lining, cladding or welding or from corrosion or attack by corrosive medium.

You agree to indemnify and hold Wyatt Industries, Inc. harmless from any liability or expenses in excess of $25,000.00 resulting from the described causes. * * * Please acknowledge your acceptance * * * "

* * * * * *

"Above conditions satisfactory and accepted. Publicker Industries, Inc. Sid Goldstein * * * "

Pursuant to these communications, the vessel was shipped on November 1, 1967. Upon arrival, the vessel was tested by Publicker and was found to be leaking badly. Nevertheless, the reactor was installed where it has been in continuous operation except for occasions when the Publicker plant was closed for repairs. Expenses were incurred by Publicker in the amount of $12,303 for repairs as a result of the cracks and leaking of the copper liner.

This suit was brought by Wyatt to recover the purchase price of the vessel, $242,202. In its counterclaim, Publicker seeks $81,399 for loss of profits due to business interruptions occasioned by defects in the reactor, and claims $88,000 for the cost of replacing and putting in serviceable condition a new reactor. Finding no genuine issue of material fact, the trial court granted summary judgment in favor of Wyatt in the amount of $233,052—the contract price less a certain portion of the shipping price which Wyatt was to pay—less Publicker's setoff for repair expenses of $12,-

303; thereby bringing Wyatt's judgment to $220,749 with six percent prejudgment interest.

The rationale behind this judgment was that regardless of the existence or nonexistence of any implied warranties of merchantability and/or fitness, Wyatt's liability was limited first, by the original guarantee clause limiting damages to replacement costs, and second, by the later telex agreement limiting Wyatt's liability for damages or repair costs to a maximum dollar amount of $25,000. With this conclusion of law, we agree.

Appellant, Publicker, attempts to create issues of fact by contending that Wyatt was bound, not only by its express warranties set out above, as agreed upon by both parties with full knowledge and disclosure of all relevant facts, but also by certain implied warranties of merchantability and/or fitness, because Publicker and Scientific Design relied upon Wyatt's expertise as designer, as well as fabricator. Although not determinative of our conclusion, we note in passing that Publicker's characterization of Wyatt occupying the position of both designer and fabricator is simply not supported by the record. The record clearly shows that Wyatt was a fabricator only, the designs and specifications being provided by Scientific Design and Publicker.

█ █ Even assuming *arguendo* that reliance was placed by Publicker upon Wyatt's expertise as a designer, thus bringing into existence the implied warranty of fitness for a particular purpose, the Pennsylvania Uniform Commercial Code, stipulated by the parties as controlling in this case, provides as follows:

"§ 2–316 Exclusion or Modification of Warranties. * * *

(4) Remedies for breach of warranty can be limited in accordance with the provisions of this Article on liquidation or limitation of damages and on contractual modification of remedy (Section 2–718 and 2–719)."

Turning to section 2–719, we find the following provisions:

"§ 2–719: Contractual Modification or Limitation of Remedy.

(1) * * * (a) the agreement may provide for remedies in addition to or in substitution for those provided in this Article and may limit or alter the measure of damages recoverable under this Article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; * * *"

Thus it is clear that even damages for breach of implied warranties may be limited by express agreement. The parties are bound by their own agreements, and it certainly cannot be claimed here that Publicker entered the agreement without full knowledge and appreciation of all material facts pertaining to the condition and prior unsuccessful testing of the vessel. Indeed, Mr. Drawdy reported on the last day of testing at the Wyatt plant that "the integrity of the liner is doubtful." The trial court did not err in its summary judgment in favor of Wyatt based upon the provisions contained in Wyatt's express limitations of damages. There were no genuine issues of material fact which would preclude the entry of such judgment.

█ We are of the opinion, however, that the trial court did err in limiting Publicker's setoff claim to $12,303. While the original guarantee clause limited damages to costs for replacement of any defective work or material, the latter telex agreement stated that "liability under the contract will not exceed $25,000.-00 for any *damage claims* or repair costs. * * *" (Emphasis added). This later telex agreement superseded the original agreement's limitation of damages to replacement costs, and appellant is entitled to recover "damages," as well as the cost of repairs, in the maximum amount of $25,000.00, as specified by the telex agreement.

458

Finally, appellant claims that interest should not be allowed to Wyatt, as Publicker's counterclaim will be substantial. There is authority in Pennsylvania law that even in a case in which a counterclaim has been subtracted, the matter of prejudgment interest is discretionary with the court. Day and Zimmerman, Inc. v. Blocked Iron Corp. of America, 200 F.Supp. 132 (E.D.Penn.1961). Considering the total contract price of $242,-202, less $9,150 shipping expenses, as compared to the allowance of setoff damages in the amount of $12,303 or even $25,000, it cannot be said that the trial court abused its discretion when it allowed prejudgment interest.

We have considered other arguments raised in appellant's brief and find them to be without merit. The summary judgment of the District Court in favor of Wyatt Industries, Inc., is affirmed with the exception of the amount to be offset on appellant's counterclaim. As to that portion of the judgment, the cause is reversed and remanded for the entry of judgment for Publicker Industries, Inc., on its counterclaim in the amount of $25,000.00 instead of $12,303.00, thus bringing Wyatt's judgment to $208,052 with interest as originally calculated by the trial court.

Affirmed in part and reversed in part.