ASKCO ENGINEERING CORPORATION
et al., Appellants,

v.

MOBIL CHEMICAL CORPORATION
d/b/a Mobil Chemical
Company, Appellee.

No. 16614.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

March 18, 1976.

Rehearing Denied April 15, 1976.

Adolph Uzick, Irving H. Weissman, Houston, for appellants.

Vinson, Elkins, Searls, Connally & Smith, Raybourne Thompson, Jr., Houston, for appellee.

COLEMAN, Chief Justice.

This is a suit on a sworn account by Askco Engineering Corporation (Askco) against Mobil Chemical Corporation (Mobil) to recover the agreed purchase price of 276,317 pounds of scrap plastic. Mobil denied the account and alleged that it had accepted 110,212 pounds of the material and had rightfully rejected the balance. Prior to the institution of the suit Mobil had tendered a payment for the material which it had accepted and had returned the balance to Askco. Askco declined to accept the tendered payment and refused to receive the returned material. Mobil filed a counterclaim for the cost of warehousing, freight, loading and unloading expense and disposal charges. The case was tried to the court without a jury and judgment was rendered in favor of Askco in the amount of $21,510.28, the sum previously tendered by Mobil, less the sum of $14,079.65, found to be due to Mobil from Askco on the counterclaim. Prior to the trial Mobil had impleaded Mr. San Sew Tsai, and alleged that he was the actual owner of most of the material in controversy. The court's judgment was in favor of Askco and San Sew Tsai jointly and severally. Askco brings this appeal. The judgment is affirmed.

Askco contends that since this was a sale in bulk of used material, such material constituted one commercial unit, and that under the Texas Business & Commerce Code the acceptance of part of the material rendered Mobil liable for the entire purchase price. Askco also contends that under the

provisions of the Texas Business & Commerce Code neither misrepresentation, mistake, or breach of warranty is a defense to an action for the payment of the purchase price where the material purchased was scrap and second hand goods and the purchaser examined the goods prior to entering into the purchase contract.

The evidence establishes that a purchase order dated April 5, 1974, issued and signed by Robert S. Feuer, an employee of Mobil, and signed by Al Robbins, vice president of Askco, constitutes a contract of sale between Askco and Mobil. This purchase order describes the goods ordered as "approximately 250,000 pounds of bulk rolls of low density P.E. film in warehouse." The testimony establishes that by the abbreviation "P.E." was meant polyethylene. On the back of the purchase order under the heading "Conditions" are eleven paragraphs. Paragraph 1 provides:

"Seller . . . warrants that such product shall be free from defects in workmanship, material or design . . and shall conform to the description and specifications . . . "

Paragraph 6 provides:

"Products purchased hereunder are subject to inspection and approval at Buyer's destination. Buyer reserves the right to reject and refuse acceptance of products which are not in accordance with . . Seller's warranties (express or implied)."

Prior to the execution of the purchase order described above Mr. Feuer inspected the material on Askco's premises. The contract agreement required Mobil to transport the material to its plant. The material was transported by truck to Mobil's plant in Temple, Texas. This plant was specifically designed to reclaim low density polyethylene and reprocess it into plastic trashcan liners. Mobil attempted to process 45,000 pounds of the material and found that it would not break down properly causing holes in the film, air losses, and down time. It appears that none of this material was successfully processed. Askco was notified of the problems Mobil was having. Some of the material was received at the Temple plant on April 17, 1974. On May 18, 1974, Mr. Robbins went to Temple to discuss the problem. There was testimony that he agreed that Mobil should pay for the goods used and retained and return the remainder to Askco in Pearland, Texas. Thereafter Mobil shipped 166,105 pounds of the material back to Askco and tendered to them a check in the amount of $21,510.28 representing the agreed price of the goods retained. Askco refused to accept the returned goods and the check. The goods were sent back to Mobil and stored by Mobil in a rented warehouse in Temple from approximately June 1, 1974, until April 15, 1975. After the material was returned to Mobil samples representing approximately 75% of the material were analyzed. These tests revealed that only 13.7% of the samples were low density polyethylene. The remaining 86.3% of the samples were various other polymers such as ethylene vinyl acetate, medium density polyethylene, high density polyethylene, ethylene-propylene copolymers or blends, and other materials of varying chemical composition. By letter dated May 8, 1974, Mr. J. C. Birdsall, president of Askco, stated:

"In my first conversation with you, I described the available material as approximately 250,000 pounds of film. Most of this was low density polyethylene with some laminate material with various interlayers (some nylon and polypropylene) . . . "

The evidence fully supports a finding that Askco expressly warranted the material purchased by Mobil to be low density polyethylene film, and that the material shipped to Mobil and received by them did not conform to the warranty.

Section 2.601, Texas Business & Commerce Code, provides that if the goods fail in any respect to conform to the contract, the buyer may accept any commercial unit or units and reject the rest. In a comment to the Uniform Commercial Code found in Vernon's Texas Codes Annotated, Business & Commerce, Section 2.601, it is stated:

"A buyer accepting a non-conforming tender is not penalized by the loss of any

remedy otherwise open to him. This policy extends to cover and regulate the acceptance of a part of any lot improperly tendered in any case where the price can reasonably be apportioned. Partial acceptance is permitted whether the part of the goods accepted conforms or not. The only limitation on partial acceptance is that good faith and commercial reasonableness must be used to avoid undue impairment of the value of the remaining portion of the goods . . . In this respect, the test is not only what unit has been the basis of contract, but whether the partial acceptance produces so materially adverse an effect on the remainder as to constitute bad faith."

The crux of this case rests in a determination of what constitutes a "commercial unit" under the circumstances of this case. The term is defined in Section 2.105(f), Texas Bus. & Comm.Code, in these words:

" 'Commercial unit' means such a unit of goods as by commercial usage is a single whole for purposes of sale and division of which materially impairs its character or value on the market or in use . . . "

Askco contends that the entire bulk of the merchandise constituting the subject matter of the contract was a commercial unit. Section 2.606(b), Tex.Bus. & Comm. Code, provides that acceptance of a part of any commercial unit is acceptance of the entire unit.

■ There is evidence that the film was on large, medium and small rolls, some was loose, some was shredded, some was in boxes, and some was contained on a pallet of rolls. The original purchase order stated the quantity as "All film at Cermetco" and described it as approximately 250,000 pounds of film. The agreed price was not a lot price but was 19 cents per pound. There is testimony that while Mobil was engaged in moving the film from the Askco storage area, a truck load of additional film was added to the contract by Askco with the assent of an agent of Mobil. This film was purchased by Askco on a poundage basis. The trial court could reasonably have found that a pound was a "commercial unit" since it appears to be the unit used by the parties and since the evidence does not establish that a division of the material into such units would materially impair its character or value on the market or in use.

■ Section 2.602, Tex.Bus. & Comm. Code, provides that nonconforming goods must be rejected within a reasonable time after their delivery. It further provides that if the buyer has before rejection taken physical possession of goods he is under a duty after rejection to hold them with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them. Section 2.604, supra, provides that if the seller gives no instructions within a reasonable time after notification of rejection the buyer may store the rejected goods for the seller's account or reship them to him or resell them for the seller's account. . Mobil elected to and did reship the goods to Askco, and on failure of Askco to accept such goods incurred additional expense in storing and testing the goods, and thereby acquired a security interest in the goods. Section 2.711, Tex.Bus. & Comm.Code. Mobil unsuccessfully attempted to sell the goods and incurred additional expense in disposing of them. There is no merit in appellants' contention that the trial court erred in finding that Mobil rightfully rejected 166,105 pounds of the merchandise in question.

Section 2.602, Tex.Bus. & Comm.Code, in paragraph (b)(1) provides that after rejection any exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller. There is evidence that the material could not be identified as low density polyethylene by visual or manual inspection. At the time Mobil rejected 166,000 pounds of the merchandise it knew that it was unable to reprocess the material and had identified a small amount of the material as being cellophane. Prior to the rejection of the material Mobil received a letter from Askco in which Mr. Birdsall stated:

" . . . Most of this was low density polyethylene with some laminate material

with various interlayers (some nylon and polypropylene) . . . ."

After Askco was notified that the goods were being rejected Mobil held the goods for a reasonable time for instructions from Askco. When no instructions were received Mobil elected to reship the goods to Askco as authorized by Section 2.604, Tex.Bus. & Comm.Code. There is no specific provision in the Code governing the action to be taken where returned goods are not accepted by the seller. Mobil elected to store the goods for the seller's benefit for a period of one year. After that period the goods were carted off and buried. There is evidence that at that time the goods had no value.

This course of conduct on the part of Mobil does not constitute an exercise of ownership by the buyer within the meaning of Section 2.602, supra. After Askco refused to accept the returned goods, spectrographic tests made by Mobil identified some of the rejected material as being low density polyethylene which would conform to the contract. In view of the difficulty of identifying the various types of chemical compounds in the large mass of materials, Mobil was not required to "cull out" the conforming goods. *Simmons Cohn & Co. v. Weil*, 244 S.W. 562 (Tex.Civ.App.—Beaumont 1922, no writ hist.). Nor was Mobil required to again tender the goods to *Askco. Seley v. Parker*, 45 S.W. 1026 (Tex. Civ.App.1898, no writ history). The goods were worthless and Mobil could reasonably believe that Askco would again refuse to accept them. 67 Amer.Jur.2d, § 771.

Askco has relied in its brief upon certain sections of the Texas Business & Commerce Code relating to implied warranties. Since Mobil relies on breach of express warranties, these sections are not applicable. Neither did Mobil accept the goods by reason of V.T.C.A.Bus. & Comm. Code § 2.606(a)(1) providing that acceptance of goods occurs when the buyer after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity. Askco relies on the fact that Mobil's representative inspected the material before the purchase order was signed, and attempted to use the material after it was delivered. While Mobil's representative had an opportunity to see, scratch and crumble the material, the testimony establishes that such an examination would not enable the representative to determine whether or not the material was low density polyethylene. Making the goods available for such an inspection does not constitute a reasonable opportunity to inspect. Furthermore, the terms of the purchase order provided that the product was subject to inspection and approval at the destination and gave the buyer the right to reject and refuse to accept products which were not in accordance with the specifications.

Finally, Askco argues that pursuant to V.A.C.S. Article 2226, it should have been awarded reasonable attorney's fees since it did obtain judgment in its suit on a sworn account for a part of the amount claimed. The judgment obtained was in the exact amount of the amount tendered to Askco prior to the institution of the suit, less the offset allowed by the court for warehousing, transportation, etc. The trial court properly denied the attorney's fees. *Johnny Morrow's Wrecking Crew, Inc. v. Slate*, 368 S.W.2d 32 (Tex.Civ.App.—Fort Worth 1963, writ ref'd n. r. e.).

By counterpoint Mobil alleges that Askco's appeal is frivolous and seeks to recover 10% of the offset awarded by the trial court under Rules 435 and 438, Vernon's Annotated Rules of Civil Procedure. We consider that substantial issues were raised by the appeal relating to the interpretation of the Texas Business & Commerce Code and, accordingly, refuse to assess the damages.

The judgment is affirmed.