FRANK'S MAINTENANCE & ENGINEERING, INC., Plaintiff-Appellant, *v.*
C. A. ROBERTS CO. *et al.*, Defendants-Appellees.

First District (4th Division)    No. 79-1854

Opinion filed July 24, 1980.

Douglas W. Graham, of Chicago, for appellant.

Roxane C. Bosey, John R. Doyle, and N. Rosie Rosenbaum, all of Chicago (Hopkins, Sutter, Mulroy, David & Cromartie, and McDermott, Will & Emery, of counsel), for appellees.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The plaintiff, upon discovering that goods ordered from one defendant and sent by the other defendant were defective, sued to recover the purchase price and certain other damages. Both defendants moved for summary judgment, contending the plaintiff was not entitled to recover since it had simply junked the goods. They also contended that the plaintiff was not entitled to recover consequential damages because of a limitation of damages provision on the back of the purchase acknowledgment. The trial court granted the motion. We reverse and remand.

The pleadings, affidavits and other evidence in the record disclose the following: The plaintiff, Frank's Maintenance & Engineering, Inc., manufactures motorcycle front fork tubes. These tubes bear the full front weight of the motorcycle and connect the motorcycle frame, through other parts, to the front wheel. On February 1, 1974, the plaintiff orally ordered some steel tubing from the defendant C. A. Roberts Co. (Roberts). Roberts sent a written acknowledgment. The record does not disclose whether there was an oral contract or merely an oral offer and a subsequent acceptance in the form of an acknowledgment from Roberts. On the back of this acknowledgment were various conditions including the following paragraph 11:

> "Seller shall not be liable for consequential damages, and, except as provided in paragraph 10 hereof, Seller's liability for any and all losses and damages sustained by Buyer and others, rising out of or by reason of this contract, shall not exceed the sum of the transportation charges paid by Buyer, mill or warehouse price and

extras, applicable to that portion of the products upon which liability is founded. Claims for defective products must be promptly made upon receipt thereof and Seller given ample opportunity to investigate; whereupon Seller may, at its option, replace those products proven defective or allow credit for an amount not exceeding the sum of the transportation charges, mill or warehouse price and extras, applicable thereto."

While several paragraphs on the front of the acknowledgment informed the plaintiff that the order had been entered with Roberts' mill and advised plaintiff to compare the acknowledgment with the original order and to advise Roberts of any error, nothing on the face of the acknowledgment advised plaintiff of the conditions on the back. To the contrary, the printed legend "conditions of sale on reverse side" had been stamped over and rendered practically illegible. Indeed, at first glance that box appears to read "No conditions of sale on reverse side." The terms of limitation were not discussed by Roberts and the plaintiff and were first brought to the attention of plaintiff's president after the commencement of the suit. Roberts ordered the steel from the other defendant, Leland Tube Company, Inc. (Leland), and directed it to send the steel directly to the plaintiff, which it did. Although the steel was supposed to be shipped in July, it was not shipped until December 1974.

The occurrence of cracks or other defects in steel tubing of the nature ordered is highly unusual. However, they can occur and such defects may be invisible to the naked eye particularly if they originate on the inside surface of the tube and do not reach the outer surface. The outer surface of the tube is covered with oxide which conceal marks which would otherwise be visible. Plaintiff had no testing equipment for such defects, the quality control procedure of manufacturers usually making such testing unnecessary.

When processing was begun on the first part of the shipment in the summer of 1975 it was discovered that the steel was pitted and corroded beyond the point where it could be reclaimed by grinding; the steel was cracked, useless and dangerous for the high-stress purposes for which it was ordered. Contrary to the express terms of the contract, the steel was welded rather than seamless. Plaintiff gave notice to Roberts of these defects on August 25, 1975, informed Roberts that it was revoking its acceptance of the goods and that it would hold the goods for 30 days for Roberts and after that time the steel would be sold and any amount received deducted from plaintiff's claim. In fact, after some 60 days had elapsed, and Roberts failed to respond in any way the plaintiff scrapped the entire lot of steel, allegedly because it was worthless. Plaintiff pointed out in its affidavit in response to the motion for summary judgment that it

was a small plant with limited storage space and that it feared that if the steel remained on the premises parts of it might have found their way into plaintiff's production process. The plaintiff was, at that time, unable to obtain products liability insurance. The steel was only removed when another shipment was expected and further storage became impossible. No scrap value was realized from the steel since the salvager expended labor in shearing the finished and partially finished pieces to prevent their possible use on motorcycles and since many pieces were chromed, greatly reducing their value as steel scrap.

The plaintiff filed suit against both Roberts and Leland for breach of warranty of merchantability, seeking the following damages:

1. The entire purchase price since no salvage value was realized;
2. The cost of cover (replacement) in excess of the purchase price of the defective lot;
3. surface grinding expenses;
4. machining expenses;
5. chrome-plating expenses.

The defendants moved for summary judgment, contending (1) that any action is barred by plaintiff's act in scrapping the goods, citing *Ozite Corp. v. F. C. Clothier & Sons Corp.* (1970), 130 Ill. App. 2d 716, 264 N.E.2d 833; and (2) the plaintiff is barred from recovering consequential damages by paragraph 11 of the purchase confirmation.

Plaintiff denied that its conduct barred recovery as a matter of law and contended that paragraph 11 was unconscionable. As already noted, the trial court granted the defendants' motion. In its well-written opinion, the trial court indicated it relied heavily on the *Ozite* case, which it considered controlling, in finding plaintiff barred from recovery by its act of scrapping the steel. The trial court found that paragraph 11 was not unconscionable as it involved a commercial transaction between corporations and a claim of wholly commercial loss. The trial court apparently did not receive any evidence as to the circumstances surrounding the agreement.

## I.
### A.

The defendants contend that, following *Ozite Corp. v. F. C. Clothier & Sons Corp.* (1970), 130 Ill. App. 2d 716, 264 N.E.2d 833, the plaintiff by scrapping the steel accepted it and cannot therefore sue for breach of warranty. *Ozite* is not in point in this issue since no suit for breach of warranty was involved. All that case held was that the buyer, having by its conduct accepted the goods, was liable for the purchase price.

Section 2—607(1) of the Uniform Commercial Code (Ill. Rev. Stat. 1973, ch. 26, par. 2—607(1)) provides that the buyer must pay at

the contract rate for any goods accepted. (*Murray v. Kleen Leen, Inc.* (1976), 41 Ill. App. 3d 436, 354 N.E.2d 415; *Southern Illinois Stone Co. v. Universal Engineering Corp.* (8th Cir. 1979), 592 F.2d 446; *Jorritsma v. Farmers' Feed & Supply Co.* (1975), 272 Or. 499, 538 P.2d 61.) However, as the Code itself clearly provides (Ill. Rev. Stat. 1973, ch. 26, par. 2—607(2); Ill. Ann. Stat., ch. 26, par. 2—607, Uniform Commercial Code Comment 3, at 453 (Smith-Hurd 1963)), acceptance of the goods does not of itself preclude a suit for breach of warranty, and a buyer who has accepted the goods with knowledge of the breach, or has failed to revoke the acceptance after discovery of the breach but has given the seller timely notice is entitled to damages for the breach. (*Murray v. Kleen Leen, Inc.* (1976), 41 Ill. App. 3d 436, 354 N.E.2d 415; *S. M. Wilson & Co. v. Reeves Red-E-Mix Concrete, Inc.* (1976), 39 Ill. App. 3d 353, 350 N.E.2d 321, *appeal denied* (1976), 63 Ill. 2d 563; *Alafoss, h.f. v. Premium Corporation of America, Inc.* (8th Cir. 1979), 599 F.2d 232.) The usual measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had as warranted (unless special circumstances show proximate damages of a different amount) plus incidental and consequential damages including expenses in connection with effecting cover. (Ill. Rev. Stat. 1973, ch. 26, pars. 2—714, 2—715; *Burrus v. Itek Corp.* (1977), 46 Ill. App. 3d 350, 360 N.E.2d 1168; *Murray v. Kleen Leen, Inc.* (1976), 41 Ill. App. 3d 436, 354 N.E.2d 415.) As these were precisely the damages sought in the complaint,[1] it is clear that defendants' motion failed to establish that the plaintiff would be unable to recover and thus the court erred in awarding summary judgment to the defendants.

### B.

While it is clear from the foregoing that the plaintiff may be entitled to recover even if it did not effectively revoke its acceptance of the steel, and that, therefore, the defendants' motion failed to establish that it was clearly entitled to judgment, nevertheless we are not convinced that it has been established as a matter of law that the plaintiff did not effectively revoke its acceptance.

---

[1] The wording of the complaint as amended appears to indicate that the plaintiff was suing for breach of warranty rather than revocation of acceptance. In fact, however, it is immaterial whether the suit initially was for revocation of acceptance or not. Under the Code (Ill. Ann. Stat., ch. 26, par. 2—608, Uniform Commercial Code Comment 1, at 463 (Smith-Hurd 1963)), the buyer is no longer required to elect between revocation of acceptance and recovery of damages for breach. Both are now available to him. *Lanners v. Whitney* (1967), 247 Or. 223, 428 P.2d 398; *Davis v. Vintage Enterprises, Inc.* (1974), 23 N.C. App. 581, 209 S.E. 2d 824, *appeal after remand, Davis v. Colonial Mobile Homes* (1975), 28 N.C. App. 13, 220 S.E.2d 802, *writ denied* (1976), 289 N.C. 613, 223 S.E.2d 391; *Welken v. Conley* (N.D. 1977), 252 N.W.2d 311; *Stimson Tractor Co. v. Heflin* (1974), 257 Ark. 263, 516 S.W.2d 379.

■■ Section 2—608 of the Uniform Commercial Code (Ill. Rev. Stat. 1973, ch. 26, par. 2—608) permits a buyer to revoke his acceptance of the goods under certain circumstances which may or may not be present here. Section 2—608(3) (Ill. Rev. Stat. 1973, ch. 26, par. 2—608(3)) provides that a buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them. Section 2—603(1) (Ill. Rev. Stat. 1973, ch. 26, par. 2—603(1)) requires such a buyer to comply with any reasonable instructions of the seller and in the absence of instructions to make reasonable efforts to sell the goods if they are perishable or threaten to decline in value speedily. Neither contingency being applicable here, the plaintiff was governed by sections 2—602 and 2—711(3) (Ill. Rev. Stat. 1973, ch. 26, pars. 2—602, 2—711(3)) (since it had a security interest), which when read together make it clear that plaintiff was entitled to sell the goods to reimburse itself for its costs and had no particular obligation with regard to the goods, assuming they were rightfully rejected, except that any exercise of ownership by the buyer is considered wrongful as against the seller. A wrongful exercise of ownership may be treated by the seller as an acceptance. (Ill. Rev. Stat. 1973, ch. 26, par. 2—606(1)(c).) The buyer does not have a duty to return the goods; rather, the burden is on the seller to repossess them if he wants them. (*Presto Manufacturing Co. v. Formetal Engineering Co.* (1977), 46 Ill. App. 3d 7, 360 N.E.2d 510; *McCormick v. Ornstein* (App. 1978), 119 Ariz. 352, 580 P.2d 1206; *Graybar Electric Co. v. Shook* (1973), 283 N.C. 213, 195 S.E.2d 514; *Garfinkel v. Lehman Floor Covering Co.* (Dist. Ct. 1969), 60 Misc. 2d 72, 302 N.Y.S. 2d 167.) And the buyer is not required even to offer back worthless goods. Ill. Ann. Stat., ch. 26, par. 2—608, Uniform Commercial Code Comment 6, at 464 (Smith-Hurd 1963); *Great American Music Machine, Inc. v. Mid-South Record Pressing Co.* (M.D. Tenn. 1975), 393 F. Supp. 877.

■■ The defendants seem to contend that because the plaintiff did not adopt any of the options laid down in section 2—604 (Ill. Rev. Stat. 1973, ch. 26, par. 2—604), it accepted the goods. Section 2—604 permits the buyer to store, reship or resell the goods and provides that such conduct constitutes neither acceptance nor conversion. As the official comment to that section points out, these options are not exhaustive but merely illustrative. Accordingly, while a buyer rejecting goods can safely adopt any of the three options set forth without fear that he will be held to have accepted the goods, he is also free to adopt some other reasonable option. Thus it has been frequently held that under certain circumstances a buyer rejecting goods or revoking his acceptance may continue to use the goods (see, for example, *Countryside Mobile Homes of Lincoln, Inc. v. Schade* (1979), 204 Neb. 209, 281 N.W.2d 746; *McGregor v. Dimou* (City Ct.

1979), 101 Misc. 2d 756, 422 N.Y.S. 2d 806; *Lawrence v. Modern Mobile Homes, Inc.* (Mo. App. 1978), 562 S.W.2d 729; *Keen v. Modern Trailer Sales, Inc.* (1978), 40 Colo. App. 527, 578 P.2d 668; *Pavesi v. Ford Motor Co.* (1978), 155 N.J. Super. 373, 382 A.2d 954; *Distco Laminating, Inc. v. Union Tool Corp.* (1978), 81 Mich. App. 613, 265 N.W.2d 768; *Mobile Homes Sales Management Inc. v. Brown* (Ct. of App. 1977), 115 Ariz. 11, 562 P.2d 1378; *Jones v. Abriani* (1976), 169 Ind. App. 556, 350 N.E.2d 635; *Jorgensen v. Pressnall* (1976), 274 Or. 285, 545 P.2d 1382; *Fablok Mills, Inc. v. Cocker Machine & Foundry Co.* (1973), 125 N.J. Super. 251, 310 A.2d 491; *Minsel v. El Rancho Mobile Home Center, Inc.* (1971), 32 Mich. App. 10, 188 N.W.2d 9), particularly where such use is a direct result of the oppressive conduct of the seller (*Jones v. Abriani* (1976), 169 Ind. App. 556, 350 N.E.2d 635), or where no prejudice is shown. (*Minsel v. El Rancho Mobile Home Center, Inc.* (1971), 32 Mich. App. 10, 188 N.W.2d 9.) Under certain circumstances, the rejecting buyer may even be entitled to destroy worthless goods without losing its right to reject or revoke its acceptance. (*Askco Engineering Corp. v. Mobile Chemical Corp.* (Tex. Civ. App. 1976), 535 S.W.2d 893.) In determining whether a buyer has so wrongfully exercised ownership over the goods as to be barred from rejecting them, the court must apply a rule of reasonableness. *Lawrence v. Modern Mobile Homes, Inc.* (Mo. App. 1978), 562 S.W.2d 729; *Pavesi v. Ford Motor Co.* (1978), 155 N.J. Super. 373, 382 A.2d 954; *Fablok Mills, Inc. v. Cocker Machine & Foundry Co.* (1973), 125 N.J. Super. 251, 310 A.2d 491; *Minsel v. El Rancho Mobile Home Center, Inc.* (1971), 32 Mich. App. 10, 188 N.W.2d 9.

It appears from the trial court's opinion that it believed, following *Ozite Corp. v. F. C. Clothier & Sons Corp.* (1970), 130 Ill. App. 2d 716, 364 N.E.2d 833, that the options set forth in 2—604 were exclusive and that since the plaintiff did not adopt one of the options it could not revoke its acceptance. If, in fact, *Ozite* did so hold, we cannot agree with that opinion in light of the clear language of the Code that the options are merely illustrative and not exclusive. Accordingly, on remand it will be necessary for the trial court to reconsider the question whether the plaintiff wrongfully exercised ownership over the goods after it revoked its acceptance in light of the overriding requirement of reasonableness which permeates the Code. (*Fablok Mills, Inc. v. Cocker Machine & Foundry Co.* (1973), 125 N.J. Super. 251, 310 A.2d 491.) Nothing in this opinion, however, should be construed as a determination by this court that the plaintiff's conduct did not in fact constitute a wrongful exercise of ownership.

■ We are aware that the plaintiff in its letter of rejection stated it would sell the goods. This promise was, however, wholly gratuitous and not

binding on it. (*Presto Manufacturing Co. v. Formetal Engineering Co.* (1977), 46 Ill. App. 3d 7, 360 N.E.2d 510.) Of course the defendants are entitled to show that they relied on that promise to their detriment.

## II.
### A.

In their motion, the defendants also contended that they were not liable for consequential damages and the court so ruled. In seeking this declaration, the defendants did not rely on that part of paragraph 11 which limited damages to the purchase price and certain other expenses but solely on the first sentence of paragraph 11 which provides that the seller shall not be liable for consequential damages. However, there was no showing that the plaintiff was, in fact, claiming consequential damages.

Consequential damages are defined by the Uniform Commercial Code (Ill. Rev. Stat. 1973, ch. 26, par. 2—715(2)):

"(2) Consequential damages resulting from the seller's breach include

(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) injury to person or property proximately resulting from any breach of warranty."

In contrast, the Code defines incidental damages as follows:

"(1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach." (Ill. Rev. Stat. 1973, ch. 26, par. 2—715(1).)

Expenses incurred in the handling of the goods such as shipping, repairs, putting goods in workable condition and in obtaining cover have been considered to be incidental rather than consequential damages. *Council Brothers, Inc. v. Ray Burner Co.* (5th Ci.. 1973), 473 F.2d 400; *Murray v. Holiday Rambler, Inc.* (1978), 83 Wis. 2d 406, 265 N.W.2d 513; *Laredo Hides Co. v. H & H Meat Products Co.* (Tex. Civ. App. 1974), 513 S.W.2d 210, *writ ref'd n.r.e.*; *Lewis v. Mobil Oil Corp.* (8th Cir. 1971), 438 F.2d 500; *General Supply & Equipment Co. v. Phillips* (Tex. Civ. App. 1972), 490 S.W.2d 913, *writ ref'd. n.r.e.*

Besides the value of the goods as represented, the damages sought by plaintiff consisted of the cost of acquiring cover and the expense of

certain treatment or repairs to the steel. Cover obviously is not a form of consequential damages. The evidence is insufficient for a determination whether the other items claimed are incidental or consequential damages.

B.

■■■ Section 2—719(3) of the Uniform Commercial Code (Ill. Rev. Stat. 1973, ch. 26, par. 2—719(3)) provides that consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable and such clauses have been upheld in many cases. (See, for example, *J. D. Pavlak, Ltd. v. William Davies Co.* (1976), 40 Ill. App. 3d 1, 351 N.E.2d 243; *County Asphalt, Inc. v. Lewis Welding & Engineering Corp.* (S.D. N.Y. 1970), 323 F. Supp. 1300, *aff'd* (2d Cir. 1971), 444 F.2d 372, *cert. denied* (1971), 404 U.S. 939, 30 L. Ed. 2d 252, 92 S. Ct. 272; *Earl M. Jorgensen Co. v. Mark Construction, Inc.* (1975), 56 Haw. 466, 540 P.2d 978; *Avenell v. Westinghouse Electric Corp.* (1974), 41 Ohio App. 2d 150, 70 Ohio Op. 2d 316, 324 N.E.2d 583; *Wyatt Industries, Inc. v. Publicker Industries, Inc.* (5th Cir. 1969), 420 F.2d 454.) The Code provides that such limitation is *prima facie* unconscionable where personal injuries are involved, but not where the loss is commercial. Nevertheless, the existence of a commercial setting is not of itself sufficient insulation against a charge of unconscionability. (*County Asphalt, Inc. v. Lewis Welding & Engineering Corp.* (S.D. N.Y. 1970), 323 F. Supp. 1300, *aff'd* (2d Cir. 1971), 444 F.2d 372, *cert. denied* (1971), 404 U.S. 939, 30 L. Ed. 2d 252, 92 S. Ct. 272.) While under the Code (Ill. Rev. Stat. 1973, ch. 26, par. 2—302(2); Ill. Ann. Stat., ch. 26, par. 2—302, Uniform Commercial Code Comment 3, at 175 (Smith-Hurd 1963)), the question of the unconscionability of a clause is for the court to decide, the court before making this determination must give the parties a reasonable opportunity to present evidence as to its commercial setting, purpose and effect. Generally a full hearing on the issue is required. *Reynolds v. Preferred Mutual Insurance Co.* (1972), 49 Mass. App. Dec. 97; *Luick v. Graybar Electric Co.* (8th Cir. 1973), 473 F.2d 1360; *Kohlenberger, Inc. v. Tyson's Foods, Inc.* (1974), 256 Ark. 584, 510 S.W.2d 555; *Haugen v. Ford Motor Co.* (N.D. 1974), 219 N.W. 2d 462; *Schroeder v. Fageol Motors, Inc.* (1975), 86 Wash. 2d 256, 544 P.2d 20.

■■ ■ Unconscionability can be either procedural or substantive or a combination of both. (*Schroeder v. Fageol Motors, Inc.* (1975), 86 Wash. 2d 256, 544 P.2d 20; *Johnson v. Mobil Oil Corp.* (E.D. Mich. 1976), 415 F. Supp. 264.) Procedural unconscionability consists of some impropriety during the process of forming the contract depriving a party of a meaningful choice. (*Schroeder v. Fageol Motors, Inc.* (1975), 86 Wash. 2d 256, 544 P.2d 20; *Williams v. Walker-Thomas Furniture Co.* (D. C. Cir. 1965), 350 F.2d 445.) Factors to be considered are all the circumstances

surrounding the transaction including the manner in which the contract was entered into, whether each party had a reasonable opportunity to understand the terms of the contract, and whether important terms were hidden in a maze of fine print; both the conspicuousness of the clause and the negotiations relating to it are important, albeit not conclusive factors in determining the issue of unconscionability. (*Schroeder v. Fageol Motors, Inc.* (1975), 86 Wash. 2d 256, 544 P.2d 20.) To be a part of the bargain, a provision limiting the defendant's liability must, unless incorporated into the contract through prior course of dealings or trade usage, have been bargained for, brought to the purchaser's attention or be conspicuous. (*Atlas Mutual Insurance Co. v. Moore Dry Kiln Co.* (1979), 38 Or. App. 111, 589 P.2d 1134.) If not, the seller has no reasonable expectation that the remedy was being so restricted and the restriction cannot be said to be part of the agreement of the parties. (*Avenell v. Westinghouse Electric Corp.* (1974), 41 Ohio App. 2d 150, 70 Ohio Op. 2d 316, 324 N.E.2d 583.) Nor does the mere fact that both parties are businessmen justify the utilization of unfair surprise to the detriment of one of the parties since the Code specifically provides for the recovery of consequential damages and an individual should be able to rely on their existence in the absence of being informed to the contrary either directly or constructively through prior course of dealings or trade usage. (*Schroeder v. Fageol Motors, Inc.* (1975), 86 Wash. 2d 256, 544 P.2d 20.) This requirement that the seller obtain the knowing assent of the buyer "does not detract from the freedom to contract, unless that phrase denotes the freedom to impose the onerous terms of one's carefully drawn printed document on an unsuspecting contractual partner. Rather, freedom to contract is enhanced by a requirement that both parties be aware of the burdens they are assuming. The notion of free will has little meaning as applied to one who is ignorant of the consequences of his acts." *Johnson v. Mobil Oil Corp.* (E.D. Mich. 1976), 415 F. Supp. 264, 269.

Substantive unconscionability concerns the question whether the terms themselves are commercially reasonable. (*Johnson v. Mobil Oil Corp.* (E.D. Mich. 1976), 415 F. Supp. 264.) While the Code permits the limitation of remedies, it must be remembered that it disfavors them and specifically provides for their deletion if they would act to deprive a contracting party of reasonable protection against a breach. (*Chemetron Corp. v. McLouth Steel Corp.* (N.D. Ill. 1974), 381 F. Supp. 245, *aff'd* (7th Cir. 1975), 522 F.2d 469; *Schroeder v. Fageol Motors, Inc.* (1975), 86 Wash. 2d 256, 544 P.2d 20.) The Code (Ill. Rev. Stat. 1973, ch. 26, par. 1—106(1)) specifically provides that the remedies provided by it shall be liberally construed to the end that the aggrieved party may be put in

as good a position as if the other party had fully performed. (*McGrady v. Chrysler Motors Corp.* (1977), 46 Ill. App. 3d 136, 360 N.E.2d 818, *appeal denied* (1977), 66 Ill. 2d 631; *Goddard v. General Motors Corp.* (1979), 60 Ohio St. 2d 41, 14 Ohio Op. 3d 203, 396 N.E.2d 761.) And as specifically stated in Comment 1 to section 2—719 (Ill. Ann. Stat., ch. 26, par. 2—719, Uniform Commercial Code Comment 1, at 603 (Smith-Hurd 1963)), if the parties intend to conclude a contract for sale within the scope of the Uniform Commercial Code-Sales, they must accept the legal consequence that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract. Reasonable agreements which limit or modify remedies will be given effect but the parties are not free to shape their remedies in an unreasonable or unconscionable way. (*McCarty v. E. J. Korvette, Inc.* (1975), 28 Md. App. 421, 347 A.2d 253; *Majors v. Kalo Laboratories, Inc.* (M.D. Ala. 1975), 407 F. Supp. 20; *Conte v. Dwan Lincoln-Mercury, Inc.* (1976), 172 Conn. 112, 374 A.2d 144; *Goddard v. General Motors Corp.* (1979), 60 Ohio St. 2d 41, 14 Ohio Op. 3d 203, 396 N.E.2d 761.) It is for this reason that courts have tended to strike down clauses barring the recovery of consequential damages or otherwise limiting recovery when the defect was latent. See, for example, *Neville Chemical Co. v. Union Carbide Corp.* (W.D. Pa. 1968), 294 F. Supp. 649, *aff'd in part, vacated in part* (3d Cir. 1970), 422 F.2d 1205, *cert. denied* (1970), 400 U.S. 826, 27 L. Ed. 2d 55, 91 S. Ct. 51; *Dessert Seed Co. v. Drew Farmers Supply, Inc.* (1970), 248 Ark. 858, 454 S.W.2d 307; *Majors v. Kalo Laboratories, Inc.* (M.D. Ala. 1975), 407 F. Supp. 20; *Earl M. Jorgensen Co. v. Mark Construction, Inc.* (1975), 56 Haw. 466, 540 P.2d 978.

■■ ■ In the present case, the evidence produced by the plaintiff discloses that the limiting clause was not conspicuous[2] and was not known to the plaintiff at the time the contract was made. Indeed, the clause directing

---

[2] Indeed, while the point was not raised by the parties there is serious question, which must be resolved by the court on remand, whether the exclusion of consequential damages is part of the contract. As already noted, the evidence does not disclose whether the original contract was verbal or whether the acknowledgment acted as an acceptance of the buyer's oral offer. If the contract itself was oral, then the court must determine what the terms of that contract were. It has been repeatedly held that the time for determining the terms of the contract is when the bargain is struck. Unless the limitation of liability is disclosed prior to the agreement and agreed upon and thereby made a part of the contract it is not binding. Thus a limitation of liability given to the buyer after he makes the contract is ineffective. (*Van Den Broeke v. Bellanca Aircraft Corp.* (5th Cir. 1978), 576 F.2d 582; *Dorman v. International Harvester Co.* (1975), 46 Cal. App. 3d 11, 120 Cal. Rptr 516; *Scott Brass, Inc. v. C & C Metal Products Corp.* (D.R.I. 1979), 473 F. Supp. 1124.) Even if the acknowledgment acted as an acceptance of the offer, the trial court could determine that the exclusion of consequential damages constituted a material alteration (*Air Products & Chemicals, Inc. v. Fairbanks Morse, Inc.* (1973), 58 Wis. 2d 193, 206 N.W.2d 414), and thus ineffective pursuant to section 2—207(2)(b) (Ill. Rev. Stat. 1973, ch. 26, par. 2—207(2)(b)).

the plaintiff's attention to conditions on the reverse side of the acknowledgment was stamped over, indicating that legend was irrelevant. In addition, the plaintiff was directed to check to see if the order as acknowledged conformed to the terms of the order as the seller otherwise could not be responsible for mistakes in the execution of the order. Thus, by implication plaintiff was informed that there was nothing else in the acknowledgment to be checked. Furthermore the defects in the steel allegedly were latent. Absent evidence produced by the defendants tending to refute this evidence or tending to show the paragraph had been negotiated by the parties and agreed to, or that prior contracts between the parties had established a consistently adhered to policy of excluding consequential damages, or whether a recognized trade practice, reasonable as applied to the plaintiff, had established such a policy (*Schroeder v. Fageol Motors, Inc.* (1975), 86 Wash. 2d 256, 544 P.2d 20), we do not believe that the court could reasonably find the clause to be conscionable.[3]

## C.

■■ Even if the limitation of liability is found to be binding upon the plaintiff, it cannot be found to absolve Leland from any claim for incidental or consequential damages. The clause merely refers to the seller, that is Roberts. Since such clauses are held in disfavor (*Chemetron Corp. v. McLouth Steel Corp.* (N.D. Ill. 1974), 381 F. Supp. 245, *aff'd* (7th Cir. 1975), 522 F.2d 469), and must be strictly construed (*Berwind Corp. v. Litton Industries, Inc.* (7th Cir. 1976), 532 F.2d 1; *Owen v. Vic Tanny's Enterprises* (1964), 48 Ill. App. 2d 344, 199 N.E.2d 280, *appeal denied* (1964), 30 Ill. 2d 627; *Valentin v. D. G. Swanson & Co.* (1960), 25 Ill. App. 2d 285, 167 N.E.2d 14), the paragraph cannot be construed to refer to Leland, a party not even named in the acknowledgment.

■■ Leland, however, contends that it cannot be held liable to the plaintiff because it was not in privity with it. It is true that absent a situation falling within the scope of section 2—318 of the Uniform Commercial Code (Ill. Rev. Stat. 1973, ch. 26, par. 2—318), or of *Berry v. G. D. Searle & Co.* (1974), 56 Ill. 2d 548, 309 N.E.2d 550), generally privity only extends to the parties to the sale and implied warranties are not applicable between the buyer and a remote manufacturer. (*Richards v. Goerg Boat & Motors, Inc.* (Ind. App. 1979), 384 N.E.2d 1084.) This is not true, however, where there is a direct relationship between the manufacturer and the seller (*Richards v. Goerg Boat & Motors, Inc.* (Ind. App. 1979), 384 N.E.2d 1084), or where, as here, the manufacturer knew

---

[3] If on remand Roberts should raise the whole of paragraph 11 and not just the bar of consequential damages as a defense, the court must apply the same tests as to whether the entire paragraph is unconscionable. However, the court will further be required to determine whether circumstances caused the limited remedy to fail of its essential purpose. Ill. Rev. Stat. 1973, ch. 26, par. 2—719(2).

the identity, purpose and requirements of the dealer's customer and manufactured or delivered the goods specifically to meet those requirements. (*Rhodes Pharmacal Co. v. Continental Can Co., Inc.* (1966), 72 Ill. App. 2d 362, 219 N.E.2d 726, *appeal denied* (1966), 34 Ill. 2d 631; *Kadiak Fisheries Co. v. Murphy Diesel Co.* (1967), 70 Wash. 2d 153, 422 P.2d 496.) Here Leland was clearly aware that the order from Roberts was on behalf of plaintiff and it shipped the goods not to Roberts but directly to the plaintiff. As the court remarked in *Kadiak*, 70 Wash. 2d 153, 165, 422 P.2d 496, 503-04:

"Under these circumstances, it is beyond dispute that Alaska Pacific's purchase of the motor from Murphy Diesel was upon the consideration that a merchantable motor, fit and suitable for the marine purposes of Kadiak, would be supplied. Kadiak thus became the beneficiary of the contract, with Alaska Pacific as the conduit through which the duty of ordinary care and the implied warranties of merchantability and fitness flowed."

Since we have determined that the trial court erred in entering summary judgment for the defendants, we reverse and remand for further proceedings in accordance with this opinion.

Reversed and remanded.

LINN, P. J. and JOHNSON, J., concur.