**Phillip JONES, et al., Plaintiffs,**

v.

**ASGROW SEED COMPANY, Defendant.**

No. 3:89CV7258.

United States District Court, N.D. Ohio, W.D.

Sept. 27, 1990.

Michael D. Martin, Martin & Martin, Lakeland, Fla., John P. Harris, III, Lackey,

Nusbaum, Harris, Reny & Torzews, Toledo, Ohio, for plaintiffs.

Richard M. Kerger, Marshall & Melhorn, Toledo, Ohio, for defendant.

## MEMORANDUM AND ORDER

WALINSKI, Senior District Judge.

This matter came before the Court for hearing on June 29, 1990 on the matter of unconscionability. Jurisdiction is pursuant to 28 U.S.C. § 1331.

## BACKGROUND

Asgrow Seed Company ("Asgrow") sold approximately 12,700 pounds of hybrid tomato seed, Lot # WTP767(7)–61026 ("767") which was labeled as Sunny to plaintiff J & B Tomato ("J & B") in January 1987. The purchase price was approximately $60,000 and J & B, acting as an agent for the remaining plaintiffs, negotiated the deal.[1]

The seed was then delivered to LaBelle Plant World, Inc., and Harvest Moon Farms Inc., for the purpose of raising seedling plants. The seedlings were raised on farms located in LaBelle, Sarasota, and Ruskin, Florida. After being raised to seedlings, they were transported and transplanted to the plaintiffs' farms in Northwest Ohio.

In July 1987, plaintiffs noticed that the tomato plants were not progressing as they should and were infested with disease. It was determined that the plants were infected with bacterial tomato canker. As a result, plaintiffs contend that they were only able to market a small quantity of the tomatoes and suffered a substantial loss.

Thereafter, plaintiffs initiated this suit against Asgrow alleging breach of the warranty of fitness for a particular purpose, breach of the warranty of merchantability, breach of express warranty, negligence, and strict liability. Previously, we granted summary judgment on behalf of defendants on all counts except that of breach of implied warranties.

Subsequently, defendants moved for an evidentiary hearing on the issue of unconscionability under U.C.C. § 2–302, ORC § 1302.15(B) which we granted. A hearing was held on June 29, 1990 and at the conclusion, the Court took the matter under advisement.

## DISCUSSION

Under ORC § 1302.15(B):

When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination.

■ The matter of unconscionability is a matter of law for the court to determine. ORC § 1302.15(B), Official Comment 3; *Insurance Co. of North America v. Automatic Sprinkler Corp.*, 67 Ohio St.2d 91, 423 N.E.2d 151 (1981).

The Official Comment to § 1302.15 offers further guidance in making this determination:

The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances *existing at the time of the making of the contract.* Division (B) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise.

(Emphasis added.) *See, Central Ohio Co–Op Milk Producers v. Rowland,* 29 Ohio App.2d 236, 281 N.E.2d 42 (1972).

■ Unconscionability can be further divided into two categories, procedural and substantive. Procedural unconscionability involves some impropriety during the pro-

1. The named plaintiffs which J & B represented during this transaction include Phillip Jones, Arthur Whitaker, David R. Sattler, Jon H. Overmeyer, Deal A. Schneider, Steyer Farms, Inc., Earl H. Weidner, James Schwartz, Kevin M. Fox, Harvest Moon Farms, Inc., Paul Bitter, Mauch Farms, Inc., Longanbach Farms, Inc., Gene H. Walston, Bernard Molyet, Denis Yoakum, Robert T. Getz, Lisa G. Jones, and Gonya Farms, Inc.

cess of forming the contract depriving a party of meaningful choice while substantive unconscionability deals with the terms of the contract itself and whether they are commercially reasonable. J. White & R. Summers, *Uniform Commercial Code,* § 4–3, 4–4 (2d ed. 1980).

In considering whether procedural unconscionability exists, several factors have been contemplated but none seen as conclusive of the question. The court in *Frank's Maintenance & Engineering, Inc., v. C.A. Roberts Co.,* 408 N.E.2d 403, 86 Ill.App.3d 980, 42 Ill.Dec. 25 (1980) stated that:

> Factors to be considered are all the circumstances surrounding the transaction including the manner in which the contract was entered into, whether each party had a reasonable opportunity to understand the terms of the contract, and maze of fine print; both the conspicuousness of the clause and the negotiations relating to it are important, albeit not conclusive factors in determining the issue of unconscionability. (Citations omitted.)

Another court considered the age, intelligence, business acumen and experience, relative bargaining power, and alternative sources as factors regarding the issue of unconscionability. *Johnson v. Mobil Oil Corp.,* 415 F.Supp. 264 (E.D.Mich.1976).

The clause at the center of this dispute states:

> LIMITATIONS OF LIABILITY: The exclusive remedy for loss or damages due to breach of the foregoing warranty or contract or for negligence or other cause shall be limited to return of purchase price of Asgrow's products and shall not include any consequential damages. Claims for defects in Asgrow's products must be presented as soon as practicable and in any event within thirty days after discovery.

Plaintiffs rely heavily upon *Martin v. Joseph Harris, Co, Inc.,* 767 F.2d 296 (6th Cir.1985) for the proposition that such limitations on consequential damages are unconscionable. *Martin* involved two commercial farmers who purchased cabbage seed from the Joseph Harris Co. which turned out to be infected with black leg (a seed borne disease). The defendant seller had previously dealt with the buyers but this transaction was different in that the company had *discontinued* its "hot water treatment" of the cabbage seed. This change was noted in a corner of defendant's seed catalog, but was not brought to the buyers attention at the time of the purchase. In addition, the order form contained a disclaimer of warranties clause and limitations of remedies to the purchase price.

The Sixth Circuit affirmed the district court's finding that the clause was unconscionable. The factors that the court took into consideration included alternative sources of supply, terms of past similar sales, the buyer's voluntary assent to the clauses, and the fact that the defect was latent. As to the first factor considered, the *Martin* court relied upon *Allen v. Michigan Bell Telephone,* 18 Mich.App. 632, 171 N.W.2d 689 (1969), another case interpreting Michigan law. However, with regard to voluntary consent, the court stated:

> Another pertinent factor considered by the district court in its unconscionability finding was that Harris Seed's salesman did not make Martin and Rick, who were uncounseled laymen, aware of the fact that the clauses in question altered significant statutory rights. Such a disclosure is an important consideration *under Michigan law.*

*Martin, supra* at 301 (Emphasis added).

We previously determined that the limitations clause on the order form was conspicuous according to Ohio law. ORC § 1302.29. Further, there is no affirmative duty on the part of a seller to point out the limitations clause and provide an explanation under the statute in Ohio. Ohio case law holds that where the disclaimer is conspicuous and read by the buyer, it constitutes assent to the terms. *Slemmons v. Ciba–Geigy Corp.,* 57 Ohio App.2d 43, 55–56, 385 N.E.2d 298 (1978).

■ In the case *sub judice,* the clause was at the bottom of the order form with the title "LIMITATIONS OF LIABILITY"

all in capital letters. From the testimony adduced at the hearing Mr. Frank Livigni, Asgrow's salesman at the time of the contract, testified that he wrote up the order per Charles Jones' instructions. He added that he went through each item "line by line" with Mr. Jones to avoid any misunderstanding, but did not read to him the limitations clause. Mr. Jones, in his deposition, agreed that the order was correct and that he had signed it. We note that his signature is directly above the limitations clause on the order form and further that plaintiffs make no claim that the disclaimers were not read or understood by Jones.

Other factors which we consider to have import in this case involve Mr. Jones' experience in the area of tomato growing. While in high school Mr. Jones claims to have studied tomato diseases and upon his graduation in 1962 to 1968, he was employed in buying and selling tomatoes. In 1968, he began working for what would eventually become J & B and from 1977 to 1987, was responsible for the procurement of tomato plants on behalf of his growers. Therefore, even though the initial transaction between Asgrow and Jones came in 1986, it was not the first such experience for Mr. Jones.

In addition the testimony by Mr. Livigni as to the circumstances surrounding the contract was credible. Looking to Mr. Jones' deposition, we found his recollection of the same series of events to be vague and in some instances contradictory. For example, Mr. Jones stated it was his understanding that the seed was "disease free" because "nobody would buy seed if they knew they were buying diseased seed". However, when asked if there were any companies that guaranteed their seed to be disease free, Mr. Jones claimed he did not know. It is difficult for this Court to accept Mr. Jones' ignorance of this fact considering that he had been purchasing tomato seed on behalf of his growers for the past ten years from companies other than Asgrow.

Finally, plaintiffs argue that the clause should be struck as unconscionable as it involved a latent defect which could have been ascertained by defendants. Looking again to the *Martin* case, we agree that a latent defect is a factor but not necessarily dispositive of the case. Furthermore, the inquiry lies in whether the defendant knew or could have known by the readily available technology at the time, that tomato canker was present in the seed.

Taking into account the testimony of Drs. Cross and Sayers along with the depositions of Drs. Fullbright and Cooksey, the Court is persuaded that the Georgia test utilized by Asgrow was an accepted method of detection available regarding tomato canker. This method failed to detect that canker was present, and even Dr. Cooksey, in his deposition stated that even today it is difficult to detect seed borne disease at the bacterium level. Therefore, we conclude that defendant could not have discovered the bacterial canker prior to the sale of the seed to plaintiffs.

Comparing this situation with that of the *Martin* case, an important distinction becomes readily apparent. First, the defendant in *Martin* had discontinued a successful method of treating black leg and did not inform plaintiffs, who were previous customers of that fact. In the case at bar, Asgrow tested the tomato seed via the Georgia test, which it had utilized before, and the test indicated that no canker was present. The present case differs drastically from the *Martin* scenario in that Asgrow did not know nor could it have known that the bacterial canker was present. Therefore, we reject plaintiffs argument that the situation at bar is identical with that of *Martin*, or that any deception on the part of Asgrow gave rise to a superior knowledge which resulted in procedural unconscionability.

The discussion then turns to one of substantive unconscionability and whether the terms of the agreement are commercially reasonable. As stated previously, Ohio law provides for such limitations on consequential damages assuming the parties are not ordinary consumers and the limitations meet the standard under ORC 1302.93. Furthermore, unconscionability is rarely

**840**

found in commercial settings. *See,* J. White & R. Summers, *supra.*

Plaintiffs argue that because a latent defect existed substantive unconscionability must be found. We disagree with this statement as it fails to differentiate between a discoverable and undiscoverable latent defect. In a case involving the sale and installation of asphalt plants, the court found that clauses containing the exclusion of consequential damages were not unconscionable as it involved a commercial setting and the defendant exhibited "good faith" in the performance of contractual obligations. *County Asphalt, Inc., v. Lewis Welding & Engineering Corp.,* 323 F.Supp. 1300, 1308 (S.D.N.Y.1970), *cert. denied* 404 U.S. 939, 92 S.Ct. 272, 30 L.Ed.2d 252 *aff'd* 444 F.2d 372 (2d Cir.1971) (applying Ohio law). The Court further stated:

> However, it is the exceptional commercial setting where a claim of unconscionability will be allowed, absent undiscoverable "latent defects".

*Id.* at 1308.

We have already determined that the latent defect was not discoverable by defendant. Further, plaintiff Charles Jones as an agent for the remaining plaintiffs, was not operating as an ordinary consumer when he undertook the commercial transaction. Therefore, we cannot accept plaintiffs latent defect argument as it pertains to substantive unconscionability.

In summary, the commercial transaction entered into between the two parties contained a disclaimer of warranty and limitations of liability clause. We have determined that the limitations clause comported with Ohio law. After affording the parties an opportunity to present evidence on the issue of unconscionability, considering the arguments promoted by both sides, we find the clause not to be unconscionable and therefore enforceable. As such, plaintiffs' remedies are limited to the purchase price of the seed.

Accordingly, it is

ORDERED that the limitations of liability clause is not unconscionable.

FURTHER ORDERED that plaintiffs' recovery is limited to the purchase price of the seed.