**CONTINENTAL GRAIN COMPANY, Plaintiff,**

**v.**

**PULLMAN STANDARD, INC., the Pullman Company, M.W. Kellogg Company, Signal Capital Corp., Wheelabrator–Frye, Inc., Defendants.**

**No. 86 C 3413.**

United States District Court, N.D. Illinois, E.D.

Jan. 20, 1988.

Lowell E. Sachnoff, Arnold A. Pagniucci, Sachnoff, Weaver & Rubenstein, Ltd., Andrew R. Laidlaw, Peter C. Woodford, Sayfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for plaintiff.

Chester J. Maciorowski, Stephen C. Carlson, John A. Heller, David B. Johnson, Sedley & Austin, Chicago, Ill., for defen-

dants Pullman Standard, Inc., the Pullman Company, M. W. Kellogg Co. and Signal Capital Corp.

Allen D. Black, Arthur M. Kaplan, Donald L. Perelman, Edward B. Rock, Fine, Kaplan & Black, Philadelphia, Pa.

Andrew P. Goldstein, Washington, D.C.

## MEMORANDUM OPINION AND ORDER

LEINENWEBER, District Judge.

This cause is before the court on the motion of defendants, Pullman Standard, Inc. and The Pullman Company, M.W. Kellogg Company, Signal Capital Corp. and Wheelabrator–Frye, Inc. ("defendants"),[1] to dismiss the amended complaint of plaintiff, Continental Grain Company. For the reasons herein stated, the motion is denied.

### FACTS [2]

As part of an integrated transaction and through a complex Participants Agreement negotiated and executed in 1978 and early 1979, the Pullman sold, and plaintiff leased for a twenty-year period, seven hundred new Pullman covered hopper cars. The cars were constructed in accord with Pullman's own standard design (¶ 11).

The lease agreement obligated plaintiff to pay the cost of any repairs necessary within the twenty-year lease period (¶ 13).

Throughout its negotiations with Pullman plaintiff had been deluged with statements and descriptions by Pullman's agents, some by interstate telephone communications and others through the mail, extolling the excellent quality of the Pullman cars (¶ 14). In addition, plaintiff was talked out of buying a competitor's hopper cars by a Pullman executive who disparaged the competing product (¶¶ 15, 18).

Unbeknown to plaintiff, but well known to Pullman since at least 1975, the hopper cars leased to plaintiff were defective in design and manufacture in that partition sheets, important and integral parts of the hopper car structure, would separate and fracture within a period far less than the anticipated useful life of the hopper car. Failure to repair would reduce the utility of the cars to perform their proper function (¶¶ 20, 21).

Had plaintiff been informed of the defect it would not have leased the hopper cars (¶ 27).

Pullman made similar representations to other potential purchasers in 1978 and 1979 and as a result sold thousands of similar hopper cars through interstate commerce for which Pullman received hundreds of millions of dollars (¶ 30).

Pullman responded to inquiries or complaints about partition sheet fractures or separations by falsely suggesting that the fractures or separations were due to customer abuse (¶ 36).

Pullman knew that the defect in the hopper cars was latent and could not be discovered by ordinary inspection (¶ 37).

Pullman has refused to repair the hopper cars and plaintiff at its own expense must repair the cars. The cost to plaintiff includes the taking of the hopper cars out of service as well as the repair costs (¶ 38).

Plaintiff brings its first count pursuant to the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. Plaintiff contends that the use of the mails and interstate wire services to disseminate fraudulent representations about Pullman hopper cars and negotiate transactions that were based upon these fraudulent representations, warranties or advertising, while concealing the partition sheet problem, constituted mail fraud under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343 (¶¶ 31–32). Plaintiff also maintains that Pullman's interstate receipt and transportation of money obtained by such fraudulent means in an amount greater than $5000 was a violation of 18 U.S.C. §§ 2314 and 2315 (¶ 33). These alleged vio-

---

1. All of the defendants are entirely owned by Allied–Signal, Inc. and have succeeded to and/or assumed the liabilities of The Pullman Company and Pullman Standard, Inc. ("Pullman").

2. Since the amended complaint is before the court on defendants' motion to dismiss, the allegations of the complaint are accepted as true. *McGraw Edison Co. v. Walt Disney Productions,* 787 F.2d 1163, 1164 (7th Cir.1986).

References are to paragraphs of plaintiff's amended complaint (¶ __).

lations are the predicate acts which constitute the pattern of racketeering activity required to state a RICO claim (¶ 34).

Plaintiff brings its Count I RICO claim under Section 1962(a), which prohibits the use or investment of income received from a pattern of racketeering activity for acquisition of any interest in, establishment of, or operation of any enterprise which is engaged in interstate or foreign commerce. 18 U.S.C. § 1962(a). Plaintiff contends that Pullman received income from the abovementioned racketeering activity and used or invested such income in its operations (¶ 36). Further, plaintiff maintains that Pullman was an enterprise engaged in or conducting activity which affected interstate commerce (¶ 35).

Plaintiff brings Count II under the Illinois Consumer Fraud and Deceptive Trade Practices Act ("Consumer Fraud Act"), Ill. Rev.Stat., ch. 121–½, ¶¶ 262 and 270a, Count III for common law fraud and misrepresentation, and Count IV for breach of warranty pursuant to the Illinois Uniform Commercial Code ("UCC"), Ill.Rev.Stat., ch. 26, ¶¶ 101 *et seq.*

## DISCUSSION

Defendants' arguments in support of their motion to dismiss may be summarized as follows: (1) Count I fails to state a claim under RICO because it does not allege fraud with the requisite particularity; (2) the complaint does not allege the requisite pattern of racketeering activity; (3) Count I fails to allege that the RICO violation was the proximate cause of plaintiff's injury; (4) the RICO claim is barred by the requisite statute of limitations; (5) Count II fails to state a claim under the Consumer Fraud Act because it does not allege representations that are actionable as fraud; (6) Count II is also barred by the statute of limitations; (7) Count III fails to state a claim for common law fraud for Pullman's claims of quality or of warranty; (8) Count IV does not state a claim of unconscionability; (9) the warranty claims in Count IV are barred by the statute of limitations;

and (10) defendants cannot be held liable for the alleged RICO violation in which it did not itself participate and thus did not succeed to the liabilities of Pullman.

### *Successorship in Liability* [3]

Defendants maintain that plaintiff has not and cannot allege that any of the defendants actually engaged in the complained of fraudulent conduct and that in order for RICO liability to exist the entity must have actually participated in the conduct.

■■■■ Plaintiff does however allege that defendants succeeded to and/or assumed the liabilities of Pullman. General successorship liability law provides that a successor corporation will be responsible for the obligations and liabilities of its predecessor under the following circumstances:

"(1) When the purchasing corporation expressly or impliedly agreed to assume the selling corporation's liability; (2) when the transaction amounts to a consolidation or merger of the purchaser and seller corporations; (3) when the purchaser corporation is merely a continuation of the seller corporation; or (4) when the transaction is entered into fraudulently to escape liability for such obligations."

*Leannais v. Cincinnati, Inc.*, 565 F.2d 437, 439 (7th Cir.1977); *Goldstein v. Gardner*, 444 F.Supp. 581, 583 (N.D.Ill.1978). Defendants contend that the established law dealing with successorship liability does not apply in RICO cases. In *Ghouth v. Conticommodity Services, Inc.*, 642 F.Supp. 1325, 1328 (N.D.Ill.1986), district court Judge Aspen held that it does apply in RICO cases. None of the cases which defendants cite speak to this point. The court finds that general successorship principles apply in RICO cases and that plaintiff has adequately alleged the successorship of defendants to Pullman.

3. Although defendants raise this argument almost as an afterthought, the court will address it first as it would be potentially dispositive of the case.

RICO

1. Particularity under Rule 9(b).[4]

■ Defendants first claim that plaintiff has failed to allege the fraud involved in the acts of racketeering with sufficient particularity as required under Rule 9(b). Rule 9(b) provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity ..." Averments describing the bare bones of the fraudulent scheme are sufficient under Rule 9(b). *Tomera v. Galt*, 511 F.2d 504, 508 (7th Cir.1975). Such averments must include reference to the approximate date on which the scheme began, the subject matter of the scheme, the parties involved and the content of the allegedly fraudulent statements. *Trak Microcomputers Corp. v. Wearne Bros.*, 628 F.Supp. 1089, 1092 (N.D.Ill.1985); *Systems Research, Inc. v. Random, Inc.*, 614 F.Supp. 494, 497–500 (N.D.Ill.1985).

■ Paragraphs 14 through 29 and 36–37 of the amended complaint meet this standard. They name the parties involved in the alleged scheme (certain employees of Pullman), the time frame of the scheme as late 1978 and early 1979, the specific content of the alleged misrepresentations and omissions, and provide sufficient detail about the subject matter of the alleged scheme to sell them defective hopper cars.

2. Racketeering Activity

Defendants next contend that plaintiff fails to allege the requisite pattern of racketeering activity under RICO. Specifically, defendants maintain that proof of a single ongoing criminal scheme implemented by a series of fraudulent acts does not establish the requisite continuity to satisfy the pattern requirement.

■ All subsections under RICO require the complainant to show that defendants engaged in a pattern of racketeering activity. A pattern of racketeering requires at least two acts of racketeering activity within ten years. 18 U.S.C. § 1961(5). The pattern requirement de-

mands continuity plus relationship between the acts. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346. The Seventh Circuit has identified as relevant factors in determining a pattern of racketeering activity the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries. *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir.1986). In addition, "the mere fact that the predicate acts relate to the same overall scheme or involve the same victim does not mean that the acts automatically fail to satisfy the pattern requirement." *Id.* at 975–76. However a single scheme with only one injury, even though it required several acts of wire or mail fraud to accomplish it, does not fall within the ambit of RICO. *Marks v. Pannell Kerr Forster*, 811 F.2d 1108 (7th Cir.1987); *Liquid Air Corp. v. Rogers*, 834 F.2d 1297 (7th Cir.1987).

■ In the instant case, with respect to itself, plaintiff alleges only one scheme that required several predicate acts to accomplish, and only one injury. However plaintiff has alleged multiple other victims involving multiple schemes and injuries. Since plaintiff does not allege an isolated incident directed only at itself, but rather multiple schemes directed toward a number of entities, the allegations do allege a pattern under RICO.

3. Proximate Cause

In order to bring a civil RICO suit a party must demonstrate that the violation of Section 1962 was the proximate cause of the injury. *See,* 18 U.S.C. § 1964(c). Defendants argue that plaintiff has not demonstrated how it was injured by the violation of Section 1962(a), which prohibits the use or investment of income received from a pattern of racketeering in an enterprise. Defendants maintain that plaintiff was allegedly harmed at the time the contract was formed, long before any of that money

---

**4.** Plaintiff has amended its complaint since the filing of the motion to dismiss to plead its

claims with more specificity.

could have been used or invested by Pullman merely by the underlying predicate acts of racketeering.

 Although this argument is seductive and several of the courts in the district have been persuaded by it, *Whobrey v. Health–Mor, Inc.*, No. 85 C 9451, slip op. (N.D.Ill. June 11, 1986) [available on WESTLAW, 1986 WL 303]; *Heritage Ins. Co. of America v. First Natl. Bank of Cicero*, 629 F.Supp. 1412, 1417 (N.D.Ill. 1986); *Latigo, et al. v. Laventhol & Horwarth, et al.*, No. 85 C 9581, slip op. (N.D.Ill. Nov. 29, 1987), the court is not. The Supreme Court has held that "a civil RICO plaintiff need not allege or prove injury beyond an injury to business or property resulting from the underlying acts of racketeering." *Haroco, Inc. v. American Natl. Bank & Trust Co. of Chicago*, 747 F.2d 384, 398 (7th Cir.1984), *aff'd* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed. 2d 437 (1985). A plaintiff need only show that the defendant engaged in a pattern of racketeering activity in a manner forbidden by these provisions, and that the racketeering activities injured the plaintiff in his business or property, and the plaintiff has a claim under Section 1964(c). *Sedima*, 105 S.Ct. at 3285. The court in *Sedima* further held that "the compensable injury necessarily is the harm caused by the predicate acts." *Id.* at 3286. The Seventh Circuit has recently ruled on this issue in accordance with the Supreme Court's rulings and held that it is sufficient for a RICO plaintiff to allege injury arising from even a single predicate act. *Marshall & Ilsley Trust Co. v. Pate*, 891 F.2d 806 (7th Cir. 1987). Plaintiff here has alleged injury proximately caused by the predicate acts of racketeering sufficient to state a RICO claim.

### 4. Statute of Limitations

 The statute of limitations for civil RICO claims is four years. *Agency Holding Corp v. Malley–Duff & Assoc.*, —— U.S. ——, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). Thus defendants contend that plaintiff is time-barred from pursuing its RICO claim which was filed eight years

after the alleged violation occurred. Plaintiff counters alleging that the statute of limitations was tolled due to Pullman's fraudulent conduct.

 Federal principles of equitable tolling are read into every federal statute of limitations. *Sperry v. Barggren*, 523 F.2d 708, 710–711 (7th Cir.1975). Where fraud goes undiscovered because the defendant has taken positive steps after commission of the fraud to keep it concealed, the limitations period is tolled until actual discovery by the plaintiff. *Tomera v. Galt*, 511 F.2d at 510. Here plaintiff has alleged that Pullman took active steps after the initial fraud to conceal the fraud. (See ¶ 36 of the amended complaint) Accordingly, the statute of limitations was tolled and plaintiff's RICO claim is timely.

### *Consumer Fraud Act*

#### 1. Actionable Representations

 Defendants contend that Count II does not allege representations that are actionable as consumer fraud under the Consumer Fraud Act, Ill.Rev.Stat., ch. 121–½, ¶¶ 261–272, since both plaintiff and Pullman were large sophisticated corporations. However "persons" entitled to bring suit under this statute are defined by Section 261 to include "any ... corporation (domestic or foreign), company, trust, business entity or association ..." It is clear that the Illinois legislature intended to allow corporations such as plaintiff to bring suit under this statute.

#### 2. Statute of Limitations

 Actions under the Consumer Fraud Act are governed by a three-year statute of limitations. Ill.Rev.Stat., ch. 121–½, ¶ 270a(e). Defendants again contend that plaintiff is barred from bringing its RICO claim as it was filed beyond the limitations period. Plaintiff maintains that the Illinois savings statute tolls the statute of limitations for fraudulent concealment until "5 years after the person entitled to bring the same discovers that he or she has such cause of action." Ill.Rev.Stat., ch. 110, ¶ 13–215. Since plaintiff has alleged fraud-

ulent concealment, this statute tolled the statute of limitations for the Consumer Fraud Act claim and for the other Illinois claims.

### Common Law Fraud

1. Claims of Quality

■ Plaintiff claims that Pullman represented, among other things, that its car was the "Cadillac of the industry" and the "best made." Defendants argue that Pullman's claims of quality were mere "puffing" and are not actionable as fraud. *Zaborowski v. Hoffman Rosner Corp.*, 356 N.E.2d 653, 655, 43 Ill.App.3d 21, 23, 1 Ill.Dec. 465, (2nd Dist.1976). However plaintiff does not base its claim solely on these representations but also alleges that Pullman fraudulently concealed the defects in the hopper cars. Such fraudulent concealment states a claim independent of the claims of quality. *Munjal v. Baird & Warner, Inc.*, 485 N.E.2d 855, 862, 138 Ill.App.3d 172, 92 Ill.Dec. 809 (2nd Dist. 1985).

2. Pullman's Warranties

■ Defendants also contend that Pullman's warranty that states, among other things, that the cars "will be free from defects in material and workmanship under normal use and service" is also not actionable as fraud. Defendants argue that this is merely a case where defendants have allegedly breached the warranty provisions and a fraud claim cannot be premised upon the fraudulent non-performance of the contract itself. *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737, 747 (2nd Cir.1979). Although defendants are correct in this rule of law, this is not a case where the only fraud is in the non-performance of the contract. Here plaintiff alleges that Pullman fraudulently induced it to enter into the contract and subsequently concealed the defects in the cars. Therefore defendants' arguments are not persuasive on this point and plaintiff's claim for common law fraud must stand.

3. Statute of Limitations

The statute of limitations on this claim is tolled by Ill.Rev.Stat., ch. 110, ¶ 13–215 for the same reasons the court set out with respect to the Count II claim under the Illinois Consumer Fraud Act.

### Warranty

1. Unconscionability

■ Count IV is brought to enforce express and implied warranties. Plaintiff alleges that the disclaimer and warranties are unconscionable. Defendants argue that the unconscionability doctrine is rarely applied in commercial settings between sophisticated corporations. *Walter Heller & Co. v. Convalescent Home of the First Church of Deliverance*, 365 N.E.2d 1285, 1289, 49 Ill.App.3d 213, 219–20, 8 Ill.Dec. 823, (1st Dist.1977). However the fact that the contract was formed in a commercial setting is not dispositive of the issue of unconscionability. *Frank's Maintenance & Emergency, Inc. v. L.A. Roberts Co.*, 408 N.E.2d 403, 409–11, 86 Ill.App.3d 980, 42 Ill.Dec. 25, (1st Dist.1980). Section 2–302 of the UCC provides that when a party claims unconscionability in a contract "the parties shall be afforded a reasonable opportunity to present evidence of its commercial setting, purpose and effect to aid the court in making its determination." Ill. Rev.Stat., ch. 26, ¶ 2–302. Plaintiff must be afforded an opportunity to present evidence on this issue; the determination of this issue is best left to the factfinder.

2. Statute of Limitations

Defendants' final argument is that Section 2–725 of the UCC, which provides for a four-year statute of limitations for breach of contract, bars plaintiff's warranty claims under Count IV. Ill.Rev.Stat., ch. 26, ¶ 2–725(1). However that section also provides that the law on the tolling of the statute of limitations remains intact, notwithstanding the four-year limitations. Ill. Rev.Stat., ch. 26, ¶ 2–725(4). Therefore the doctrine of fraudulent concealment also tolls this claim. *See*, Ill.Rev.Stat., ch. 110, ¶ 13–215.

## CONCLUSION [5]

For the reasons stated, defendants' motion for summary judgment is denied.

IT IS SO ORDERED.

---

**5.** Defendants' two additional arguments were rendered moot in light of the amended complaint so the court declines to address them.