DAVID L. MURRAY, Plaintiff-Appellee, Cross-Appellant, *v.* KLEEN LEEN, INC., *et al.*, Defendants-Appellants, Cross-Appellees.

Fifth District    No. 75-428

Opinion filed August 18, 1976.

Robert L. Douglas, of Robinson, for appellants.

438

E. H. Price, of Robinson, and Dale A. Cini and Donald Garrison, both of Ryan and Cini, Ltd., of Mattoon, for appellees.

Mr. PRESIDING JUSTICE KARNS delivered the opinion of the court:

Defendant-appellant Kleen Leen, Inc., appeals from a judgment of $29,200 for breach of warranty entered on a jury verdict in favor of plaintiff-appellee David L. Murray by the Circuit Court of Crawford County. Kleen Leen urges numerous grounds of error, including contentions that the evidence was insufficient to support the verdict, the damages awarded were excessive and not supported by the evidence, and the trial court erred in granting one of plaintiff Murray's instructions. Murray in turn appeals from a judgment of $12,000 entered on the jury's verdict in favor of Kleen Leen on its counterclaim.

Murray owned and operated a farm in Crawford County, Illinois, where he raised hogs and grain. In the fall of 1969, he became aware of the Kleen Leen program through Bill Harrington, a Ralston Purina Co. representative. (Kleen Leen is a subsidiary of Ralston Purina.) The Kleen Leen program was an attempt to provide hog farmers with specific-pathogen-free breeding gilts through a leasing program. The gilts were to be free of diseases, including atrophic rhinitis, that may be transmitted to young pigs through the birth canal. The gilts were to be specially bred to yield top-quality pigs which could convert feed into pork more efficiently and provide a leaner meat. The program required the hog farmer to undertake extensive preparations on his land to guard against the possibility of disease being transmitted to the gilts following delivery to the farmer.

David Murray met with Bill Harrington and Art Swanson, Ralston Purina Co. representatives, and with Bill Fox, a Kleen Leen representative. After these discussions, Murray read the literature supplied by Kleen Leen, and began preparations on his farm for entry into the program. Following the directions of Harrington and Fox, he depopulated his existing herd, tore down old fences and buildings which were potential germ carriers, and cleaned up the area where the hogs were to be raised. He constructed a farrowing house equipped with a ventilating system and high-pressure sprayer and built new fences at a considerable cost. After Kleen Leen approved Murray's ongoing preparations, the parties entered into a written contract on January 12, 1970. The gilts were to be delivered in three groups, the first group to arrive in mid-March, and the subsequent groups to arrive at two-month intervals.

Murray accepted the animals when delivered and inoculated them. In early June, he experienced problems with moldy feed sold to him by

Ralston Purina. In the middle of June, he discovered that a gilt delivered May 15 was exhibiting the symptoms of atrophic rhinitis. Atrophic rhinitis is an infectious disease occurring in swine which is similar to a cold in humans. Its symptoms are sneezing, runny eyes, a deviation of the snout, respiratory problems, and often loss of appetite.

On the advice of a veterinarian, Murray administered heavy doses of antibiotics to the gilts. In the ensuing months, however, approximately 25 of them died. Many of the remaining gilts were unable to breed. Those that farrowed had unusually small litters of live pigs, with many stillbirths and mummified pigs. Murray brought suit against Kleen Leen and Ralston Purina, resulting in the judgments that are the basis of these appeals. Ralston Purina has not appealed from the judgment entered against it arising from the sale of defective feed.

■■ Kleen Leen contends that the trial court erred in denying its motion, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *(Pedrick v. Peoria & Eastern R.R. Co.,* 37 Ill. 2d 494, 229 N.E.2d 504 (1967).) Under section 68(4) of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 68(4)), where several grounds of recovery are pleaded in support of the same demand, an entire verdict will not be set aside for the reason that the evidence in support on any ground is insufficient if the evidence on another of the grounds is sufficient to sustain the verdict.

The liability of Kleen Leen was asserted and submitted to the jury in three alternative counts dealing with breach of warranty. The first two counts alleged the breach of express warranties that the gilts were to be free from atrophic rhinitis and of "top quality." The third count asserted the breach of an implied warranty of fitness for the particular purpose of breeding. Thus if the evidence was sufficient to support any of these alleged grounds of recovery, the motion for judgment *n.o.v.* was properly denied.

Dr. Trimble, a veterinarian called by the plaintiff, testified that the symptoms of atrophic rhinitis are a deviation of the nose, sneezing, and watery eyes. These symptoms were confirmed by Dr. Hayden and Dr. Layman, experts called by the defense. David Murray testified that he discovered a gilt delivered on May 15 exhibiting these symptoms on June 15. Phillip and Byron Murray, brothers of the plaintiff, also testified that they observed the gilt with these symptoms. David Murray testified that he showed the gilt with atrophic rhinitis to Harrington and Fox; Harrington identified the symptoms as atrophic rhinitis, while Fox suggested the gilt may have bumped its nose.

David Murray testified that the litters of the gilts were abnormally

small, averaging two to three pigs per litter rather than the normal eight to ten. The gilts also produced stillborn pigs, abortions, and mummified pigs. This testimony was corroborated by Phillip and Byron Murray.

A nasal swab test conducted on the gilt with the symptoms of atrophic rhinitis returned negative. A high level of the antibiotic drug ASP, however, had been administered to the gilt. Dr. Trimble testified this could cause the swab test to be negative, and Dr. Layman concurred in his testimony. Dr. Trimble testified that in his opinion a gilt approximately six months of age which exhibited symptoms of atrophic rhinitis approximately 30 days after delivery to a farm probably contracted the disease prior to delivery in its first few months of life.

Jimmy Harrington and Jewel Garrison, hog farmers who purchased the gilts Murray eventually sold at the direction of Kleen Leen in September and December of 1971, both testified that the hogs they purchased were very thin and undernourished. They testified, however, that the gilts exhibited no signs of atrophic rhinitis and gained weight rapidly under their supervision.

Dr. Hayden testified that the slaughter checks on the source herd for Murray's gilts never revealed atrophic rhinitis. He also testified as to other possible causes of stillbirths, mummified pigs, and abortions, including malnutrition and virus. Bill Harrington and Bill Fox testified as to poor management practices on Murray's farm, including improper bedding and an incomplete farrowing house. Both denied ever seeing any evidence of atrophic rhinitis.

Dr. Dallgren examined the reproductive systems of nine of the swine of Murray's farm. Four were pregnant, three carrying normal-sized litters. None of the reproductive systems of the five remaining animals appeared abnormal, although tests which could have conclusively determined whether the systems were functional were not conducted.

In considering a motion for directed verdict or judgment *n.o.v.*, the reviewing court will not consider conflicts in the evidence, its weight, or the credibility of the witnesses, as these are properly for the jury to consider. (*McManus v. Feist*, 76 Ill. App. 2d 99, 221 N.E.2d 418 (4th Dist. 1966).) While the evidence here is unquestionably contradictory, we cannot say, considering it in the light most favorable to the appellee, that it so overwhelmingly favors the appellant that the verdict as rendered cannot stand. From the evidence that one gilt and a large number of offspring exhibited symptoms of atrophic rhinitis, and that some 25 of the gilts died, the jury could reasonably have found that Kleen Leen breached its express warranty that the pigs were free from atrophic rhinitis. From the failure of the remaining gilts to breed properly and to farrow normal-sized litters of healthy pigs, the jury could reasonably have found that Kleen Leen breached the implied warranty of fitness for breeding

purposes. Because the evidence on either of these grounds was sufficient to support the jury's verdict, we need not decide whether the representation that the swine would be of "top quality" rises to the level of an express warranty.[1]

■■ Kleen Leen also urges that its motion for a new trial was erroneously denied, as the verdict was against the manifest weight of the evidence. A verdict is against the manifest weight of the evidence only when the opposite conclusion is clearly apparent or the findings appear to be unreasonable, arbitrary and not based on the evidence. (*Wilson v. Don LaCost, Inc.*, 20 Ill. App. 3d 624, 314 N.E.2d 27 (4th Dist. 1974).) The jury alone must determine the weight of the evidence and credibility of the witnesses on controverted questions of fact. (*Brayfield v. Johnson*, 62 Ill. App. 2d 59, 210 N.E.2d 28 (5th Dist. 1965).) Neither the trial court nor the reviewing court should sit as a second jury to consider the nuances of the evidence or the demeanor and credibility of the witnesses. (*Stringer v. McHugh*, 31 Ill. App. 3d 720, 334 N.E.2d 311 (5th Dist. 1975).) We cannot say that the jury's finding here was unreasonable, arbitrary, and not based on the evidence. Again, section 68(4) of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 68(4)) provides that a verdict will not be set aside where the evidence supports any of the alternative counts. Although the facts were highly controverted, the jury's verdict was supported by the evidence.

Kleen Leen further contends that Murray is barred from asserting any remedy for the alleged breaches of warranty by his failure to notify the seller. Section 2—607(3)(a) of the U.C.C. (Ill. Rev. Stat. 1973, ch. 26, par. 2—607(3)(a)) provides that where a tender has been accepted, the buyer must, within a reasonable time after he discovers or should have

---

[1] Although not necessary to our finding that defendant-appellant's motion for judgment notwithstanding the verdict was properly denied, Kleen Leen's contention that Murray waived the implied warranty of fitness for the purpose of breeding under section 2—316(3)(b) of the Uniform Commercial Code (Ill. Rev. Stat. 1973, ch. 26, par. 2—316(3)(b)) is without merit. Under section 2—315 of the U.C.C. (Ill. Rev. Stat. 1973, ch. 26, par. 2—315), where the seller has reason to know at the time of contracting of any particular purpose for which the goods are required, and that the buyer is relying on the seller's skill to furnish suitable goods, an implied warranty of fitness for the purpose arises unless excluded or modified. Section 2—316(3)(b) provides that where a buyer *before* entering into a contract has examined the goods, there is no implied warranty with respect to defects which an examination ought, under the circumstances, to have revealed to him. The examination on which appellant relies, however, occurred at delivery on May 15, 1971—in other words, *after* the contract between Kleen Leen, Inc., and Murray was consummated on January 12, 1971.

Further, Official Comment 8 to section 2—316 indicates that only those defects which a particular buyer's skill and normal method of examination would reveal are excluded. Those defects which could only be discovered by chemical or other testing not permitted by the circumstances are not excluded. Here, the uncontroverted evidence indicates that plaintiff Murray would not be likely to notice, and in fact did not notice, the symptoms of atrophic rhinitis at the time of delivery. Under these circumstances, an implied warranty of fitness for a particular purpose would not be waived.

discovered the breach, notify the seller of the breach or be barred from any remedy. Official Comment 4 to this section states that the content of the notification need only be sufficient to inform the seller that the transaction is troublesome and must be watched.

■■ As noted above, the uncontroverted testimony indicated that the nature of the defect here—the symptoms of atrophic rhinitis—was such that the plaintiff would not be likely to, and could not be expected to, discover it at the time of delivery. Within a few days following his discovery of the gilt with symptoms of atrophic rhinitis, Murray informed Kleen Leen's representative, Fox, of the situation. Fox was also aware of the problems the plaintiff was experiencing in the breeding process. The notification of breach of warranty need not be in any particular words and is ordinarily a question of fact, looking to all the circumstances of the case. (*Overland Bond & Investment Corp. v. Howard*, 9 Ill. App. 3d 348, 292 N.E.2d 168 (1st Dist. 1972).) In the case at bar, the jury's implicit finding of notification within a reasonable time of discovery was supported by the evidence.

Plaintiff Murray testified as to his damages with the aid of a written summary of the alleged damages. This summary was made following an examination of his farm records for the years in question. Appellant contends that the use of the written summary violated the best evidence rule. We cannot agree. It is true, as appellant notes, that plaintiff must comply with the best evidence rule in his proof of damages. However, where the records to be examined are voluminous and the facts to be testified to may be ascertained by calculations, then a competent person who has examined the records may testify thereto, as this is the only method of intelligible presentation to the jury. (*People v. Gerold*, 265 Ill. 448, 107 N.E. 165 (1914); *Smith v. Sanitary District*, 260 Ill. 453, 103 N.E. 254 (1913); *see also People ex rel. Wenzel v. Chicago & North Western Ry. Co.*, 28 Ill. 2d 205, 190 N.E.2d 780 (1963).) This constitutes an exception to the requirement of the introduction of the original documents. As Wigmore states the rule:

> "Where a fact could be ascertained only by the inspection of a large number of documents made up of very *numerous detailed statements*—as, the net balance resulting from a year's vouchers of a treasurer or a year's accounts in a bank ledger—it is obvious that it would often be practically out of the question to apply the present principle by requiring the production of the entire mass of documents and entries to be perused by the jury or read aloud to them. The convenience of trials demands that other evidence be allowed to be offered, in the shape of the testimony of a competent witness who has perused the entire mass and will state summarily the net result. Such a practice is well established to be proper.

Most courts require, as a condition, that the mass thus summarily testified to shall, if the occasion seems to require it, be placed at hand in court, or at least be made accessible to the opposing party, in order that the correctness of the evidence may be tested by inspection if desired, or that the material for cross-examination may be available * * *."

The most commonly recognized application of this principle is that by which the state of *pecuniary accounts* or other business transactions is allowed to be shown by a witness' schedule or summary." 4 Wigmore, Evidence, sec. 1230 (Chadbourn rev. ed. 1972).

This condition was fully met in the case at bar, as the farm records were available for an in-court examination by appellant and were in fact introduced into evidence by its co-defendant, Ralston Purina Co.

■■ The testimony of the plaintiff, based on his examination of the farm records, and coupled with the production of the farm records, provided a sufficient basis for the jury to ascertain the extent of his damages with the requisite reasonable degree of certainty. The fact that the plaintiff was the only witness to testify to this damage does not render the proof of damages inadequate or insufficient. *Illinois Structural Steel Corp. v. Pathman Construction Co.*, 23 Ill. App. 3d 1, 318 N.E.2d 232 (1st Dist. 1974).

Appellant further contends that evidence of monies expended for feed, labor, utilities, repair and maintenance for the period from February 1971 to December 1971 was erroneously introduced, as a disclaimer of profitability in the written contract operated to bar the recovery of operating expenses. No objection was made in the trial court to the introduction of expenses for this period, and we therefore deem this claim of error waived.

Under the U.C.C., where the buyer has accepted the goods with knowledge of the breach or, as here, has failed to revoke the acceptance after discovery of the breach, but has given the seller timely notice, he is entitled to damages for the breach. The usual measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted unless special circumstances show proximate damages of a different amount. Incidental and consequential damages may be recovered in a proper case. (Ill. Rev. Stat. 1973, ch. 26, par. 2—714(2) and (3).) Consequential damages include any loss resulting from the general or particular requirements and needs of the buyer of which the seller had reason to know at the time of contracting. (Ill. Rev. Stat. 1973, ch. 26, par. 2—715(2).) Murray's construction of the building and fences was accomplished at the direction of Kleen Leen and thus

constituted "special circumstances" under section 2—714 for which recovery is allowed under section 2—715, as the seller had reason to know of this particular requirement of the buyer. See *Adams v. J.I. Case Co.*, 125 Ill. App. 2d 388, 261 N.E.2d 1 (4th Dist. 1970).

■■ Kleen Leen concedes that Murray's out-of-pocket expenses in preparing his farm to enter into the Kleen Leen program were a proper element of damages, but argues that recovery for the expense of fixed capital improvements should be reduced by the increase in value to plaintiff's land. Murray concurs in this general statement of the law, but contends that the jury's award of $29,200 was supported by sufficient evidence, and thus error, if any, in admitting evidence of the cost of fixed capital improvements without proof of the present value of the improvements was harmless. We agree.

According to Murray's uncontradicted testimony, he spent $12,400 for materials to build the farrowing house, $6,167 to install ventilating equipment, and $787 to build a fence. The farrowing house, which was still on the real estate, was useful only for farrowing, and had not been used since the last gilt was sold in December 1971. Murray testified that neither the house nor the ventilating equipment had any present value to him, but he estimated their useful lives at 20 years. He had started using the fencing, which had an estimated useful life of 10 years, two months before trial.

Murray testified to total out-of-pocket expenses of about $46,000—some $19,000 for capital improvements to prepare for performance of the Kleen Leen Contract, and $27,000 for operating costs and loss of use of his land. His Federal income tax returns for 1970 and 1971 show total depreciations deductions of about $3,000 for the farrowing house, equipment, and fencing. Thus, even without considering the cost of the capital improvements, the other evidence afforded a sufficient basis for the jury's award of $29,200 with reasonable certainty.

■■ Kleen Leen's final contention of error concerns the validity of the second sentence of plaintiff's Instruction No. 11. This instruction reads:

> "With regard to the lease of the animals by Kleen Leen, Inc. to David L. Murray, the law provides that Kleen Leen, Inc. impliedly warranted to David L. Murray that the animals would be fit for the known use for which they were intended. The law provides that this warrant was given by Kleen Leen, Inc. to David L. Murray notwithstanding any other provisions in the contract between the parties."

Appellant contends that the second sentence is an improper expression of the law, as section 2—316 of the U.C.C. (Ill. Rev. Stat. 1973, ch. 26, par. 2—316) allows the seller to negate or limit an implied warranty. Appellant does not contend that any contractual provision served to negate or limit

the implied warranty, rather, that the inclusion of the sentence served to give the jury the erroneous impression that an attempt to negate the warranty had occurred, and therefore the instruction was argumentative.

Paragraph 22 of the Kleen Leen-Murray contract reads as follows:

"Corporation makes no representation of profitability or warranty of results, and producer specifically acknowledges any livestock operation is affected by changes in costs, markets and unforeseeable factors which directly affect profits or loss."

Plaintiff's Instruction No. 11 was intended to instruct the jury that an implied warranty of fitness was in existence, and that paragraph 22 did not negate that warranty. While the wording of the instruction might be subject to different interpretations, we hold that it states the law as applicable to the facts of this case and does not constitute reversible error. Thus the judgment in favor of Murray on his complaint for breach of warranty is affirmed.

On his cross-appeal, Murray contends that the verdict for Kleen Leen on its counterclaim was not supported by sufficient evidence and thus Murray's motion for judgment notwithstanding the verdict was improperly denied. Murray also contends that the trial court erred in denying his motion for a new trial, as the verdict on the counterclaim was against the manifest weight of the evidence. These contentions are without merit.

■■ The evidence clearly establishes that plaintiff Murray accepted the gilts at the time of delivery, and did not revoke his acceptance following the discovery of the breach of warranty. Section 2—607 of the Uniform Commercial Code (Ill. Rev. Stat. 1973, ch. 26, par. 2—607) provides that the buyer must pay at the contract rate for any goods accepted, although acceptance in itself does not preclude the buyer from asserting the remedies provided for in the Code. Murray was thus required to pay for the goods at the contract price, and the motions for judgment notwithstanding the verdict and for a new trial were properly denied.

Murray next contends that the award of damages on the counterclaim was not supported by sufficient evidence, entitling him to a new trial on the issue of damages. He asserts that the testimony of the Kleen Leen credit manager as to damages was improperly admitted in violation of the best evidence rule and in violation of the jury's right to determine the ultimate issue.

■■ The challenged testimony centered on an explanation of the payments required and a determination of the amounts due after proper calculation under a complex formula set out in the contract between Kleen Leen and Murray. While as a general rule testimony regarding damages is limited to data from which the jury may determine a proper

award, an exception to the best evidence rule, as noted earlier in this opinion, allows the results of examination of voluminous records or masses of figures to be presented by testimony of a competent witness who has examined the records, provided the fact to be attested to may be determined by calculation. While care must be taken not to invade the province of the jury on an ultimate issue, it has long been settled that it is proper "to take the evidence of a book-keeper, accountant or other person skilled in work of that character, to show the footing of a column of figures or to show the result of any calculations from a complicated set of figures which cannot be readily carried in mind by the jury, where the calculation is purely mechanical." (*Estate of Smythe v. Evans*, 209 Ill. 376, 388, 70 N.E. 906, 911 (1904).) The credit manager's testimony dealt with mechanical computations of amounts due under a contract with a complex payment schedule, and the admission was not error. This testimony, coupled with the introduction of the contract, constitutes a sufficient evidentiary basis for the jury's award of damages.

The judgment of the Circuit Court of Crawford County, with respect to both the claim and counterclaim, is therefore affirmed.

Affirmed.

JONES and G. J. MORAN, JJ., concur.