2023 IL App (1st) 220858-U

No. 1-22-0858

Second Division
December 12, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| | ) | Appeal from the |
| VAN HOEKELEN GREENHOUSES, INC., | ) | Circuit Court of |
| | ) | Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 19 L 10001 |
| | ) | |
| WORK 6, INC., | ) | Honorable |
| | ) | Patrick J. Sherlock, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Howse and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court's judgment following the bench trial and its denial of the appellant's motion for reconsideration is affirmed where this court has not been provided with a sufficient record to review the claims on appeal.

¶ 2    Plaintiff-appellee Van Hoekelen Greenhouses, Inc. (VHG) instituted this action against defendant-appellant Work 6, Inc. (Work 6) for breach of contract (count I) and account stated (count II) to collect payment for perishable plants that VHG sold and delivered to Work 6 between May and June of 2018. Following a bench trial, the trial court entered judgment in favor of VHG

and awarded VHG $71,000.96, plus costs. On appeal, Work 6 argues that the trial court erroneously granted judgment in favor of VHG because the court failed to provide any credits to Work 6 for the non-conforming premium hanging baskets and tulips and employed an improper method to calculate the appropriate credits for the poinsettias. Work 6 also contends that the trial court erroneously denied its motion for reconsideration. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     VHG is a Pennsylvania-based greenhouse business engaged in the wholesale of seasonal plants and flowers. From November 2016 to October 2018, VHG provided plants to Work 6, an Illinois corporation, which it would then sell to its customers, often grocery stores. Work 6 would submit purchase orders to VHG, who would then deliver the goods and send invoices to Work 6 for payment.

¶ 5     On September 11, 2019, VHG filed a two-count complaint against Work 6. Count I alleged a breach of contract for failure to pay for goods and services. Count II was based upon an account stated. VHG requested judgment in its favor in the amount of $80,833.91, plus costs and pre- and post-judgment interest. Attached to the complaint is a copy of an invoice showing the amount due at the time the complaint was filed.

¶ 6     On December 12, 2019, Work 6 entered its appearance and filed a motion for a bill of particulars requesting the following: a detailed description of the goods and services for which VHG claims Work 6 did not pay, the dates on which those goods and services were provided, and an accounting of all charges for the goods and services provided, including all credits for payments that Work 6 made for said goods and services.

¶ 7     On January 7, 2020, VHG filed its bill of particulars. Attached were invoices sent to Work 6 and an accounting of all charges for goods and services provided to Work 6 and all credits for

payments Work 6 made for those goods and services. Additionally, the bill stated that all invoices (also referred to as "delivery tickets") included provisions stating that "any claims must be made within 24 hours from receipt of delivery" and "2% monthly charge added to all invoices unpaid after 30 days."

¶ 8    On February 27, 2020, Work 6 filed its answer and affirmative defenses to the complaint. Work 6 generally denied liability and alleged the following affirmative defenses: failure of a condition precedent, material breach of contract by VHG, fraud in the inducement, misrepresentation of material fact, innocent misrepresentation of material fact, equitable estoppel, unclean hands, and laches. Therein, Work 6 specifically alleged that between April 2018 and June 2018, it received "several shipments of defective goods" from VHG and VHG promised to provide Work 6 with credits to compensate for the defective goods, but VHG never provided the promised credits.

¶ 9    The matter proceeded to a bench trial on September 20, 2021. After testimony was presented and exhibits were admitted, the court ordered the parties to submit their closing arguments in writing.[1]

¶ 10    In VHG's closing argument, it stated that in May 2018, Work 6 stopped paying VHG's invoices and from May 4, 2018 to June 4, 2018, VHG delivered eight shipments of plants to Work 6, which Work 6 received and accepted but has refused to pay for. VHG argued that Work 6 never rejected or revoked its acceptance of the alleged non-conforming plants, any vague complaint about the plants was insufficient to constitute rejection, and 24 hours is a reasonable time for rejection of perishable plants and is standard in the trade. VHG further contended that Work 6 did

_____

[1] Work 6 did not provide this court with a report of proceedings, or an acceptable substitute, or the exhibits from the bench trial in violation of Illinois Supreme Court Rule 321 (eff. Oct. 1, 2021).

not request credits for the non-conforming goods until after VHG demanded payment on the past due account, which was months after delivery, and therefore, the request for credits was not made within a reasonable time. Finally, VHG asserted that Work 6 did not properly care for the perishable plants after delivery which, it maintained, could be related to their issues with them.

¶ 11    In Work 6's closing argument, it asserted that the amount owed to VHG should be greatly reduced "to account for damages incurred by Work 6 due to [VHG's] breach of its sales contract," particularly to remedy for non-conforming goods delivered to Work 6. Work 6 explained the defects for each of its contested plant deliveries. As to the poinsettias, Work 6 claimed that it had received poinsettias that did not meet the advertised height requirement and a shipment of poinsettias were delivered at a colder temperature than what is required. As to the tulips, Work 6 claimed that the delivery was a day late and the tulips were delivered as "blown-out tulips" despite ordering tulips that were fully closed. As to the premium hanging baskets, Work 6 claimed that they lacked color and bloom and as such were of poor quality. As to the basic hanging baskets, Work 6 claimed that they had been shrink-wrapped too tightly, causing them to die within a day. Work 6 asserted that the tulips, premium hanging baskets, and basic hanging baskets were properly rejected within a reasonable time after delivery. It further argued that, even if there was an acceptance of some of the goods, that acceptance was properly revoked where the goods were sold at a reduced price. Finally, it contended that, regardless of acceptance of non-conforming goods, Work 6 was owed credits as a remedy for the non-conforming goods.

¶ 12    On December 2, 2021, the trial court entered a judgment order and opinion, which set forth the following. The court found that the terms of VHG's invoices were clear and undisputed, requiring that all claims related to goods sold be made within 24 hours after delivery, and in May 2018, Work 6 stopped paying VHG's invoices but continued to order and accept delivery of goods.

The court found that between May 4, 2018 and June 4, 2018, VHG delivered eight shipments of plants and Work 6 received and accepted six of those shipments. The court found that Work 6 timely rejected the basic hanging baskets and for that, the court allowed credits in the amount of $14,560. The court also granted a credit of $9,741.40 for the non-conforming poinsettias, which Work 6 also timely rejected. The court denied credits for the premium hanging baskets and tulips because Work 6's conduct did not constitute proper rejection. The court found that the balance for the goods that were not properly rejected was $39,892.20, and VHG was entitled to monthly interest in the amount of $797.84 multiplied by 39 months. Therefore, the court entered judgment in favor of VHG in the amount of $71,000.96.

¶ 13    On January 3, 2022, Work 6 filed a motion to reconsider. Therein, Work 6 argued that the trial court "misapplied the law in its determination that there was not a proper rejection of the goods" and the court "failed to consider any revocation of any acceptance or the damages between the parties." Work 6 further argued that the perishable nature of "the premium baskets made those baskets worthless[,]" VHG had an obligation to repossess those plants, and Work 6 was entitled to destroy the allegedly worthless goods without losing its rights to reject the goods or revoke an acceptance of the goods. To support this argument, Work 6 cited to *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.*, 86 Ill. App. 3d 980 (1980). Finally, Work 6 argued that, even if the premium hanging baskets and tulips were deemed accepted, it retained remedies under the UCC for non-conforming goods.

¶ 14    VHG filed a response, arguing that Work 6 did not identify an error of law in the trial court's judgment but merely rehashed the same arguments in its closing argument, which challenged the trial court's findings of fact. VHG also argued that *Frank's Maintenance* was inapplicable.

¶ 15    On May 10, 2022, the trial court denied Work 6's motion to reconsider, finding that its sole new argument, based upon *Frank's Maintenance*, was unavailing.

¶ 16    This appeal followed.

¶ 17                                    II. ANALYSIS

¶ 18    On appeal, Work 6 argues that the trial court erroneously granted judgment in favor of VHG in the amount of $71,000.96 because the trial court failed to consider sections 2-607(3)(a), 2-714, and 2-717 of the Uniform Commercial Code (UCC) (810 ILCS 5/2-607(3)(a), 2-714, 2-717) (West 2020)) and should have granted Work 6 credits for the accepted but non-conforming premium baskets and tulips. It also argued that the trial court employed an incorrect method for determining the credits owed for the poinsettias. Finally, it contended that the court erred in denying its motion to reconsider.

¶ 19                          A. Premium Baskets and Tulips

¶ 20    Work 6 first claims that the trial court erred in basing its decision "entirely on its determination that Work 6 never properly rejected the goods and Work 6 accepted the goods[.]" In particular, it asserts that the trial court failed to consider that the UCC allows buyers to recover damages due to non-conformity of accepted goods and therefore should have granted Work 6 credits for the non-conforming but accepted premium baskets and tulips.[2]

¶ 21    Preliminarily, we must address the dispute between the parties as to whether the issue presented is solely a question of law or a question of fact. Our resolution of this preliminary dispute determines our standard of review.

---

[2] It appears to this court that Work 6 is conceding that it accepted the non-conforming premium hanging baskets and tulips as it has made no argument in its brief that it properly rejected the goods or revoked its acceptance of the goods.

¶ 22    As the appellant, Work 6 had the duty of providing this court with a sufficiently complete record of the proceedings below to support its claims of error. *Midstate Siding & Window Co. v. Rogers*, 204 Ill. 2d 314, 319 (2003) (citing *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984)). The record before us does not contain any transcripts from any hearings before the court, including the two-day bench trial, at which witnesses from both parties provided testimony. The exhibits presented at the trial are also missing from the record. There is no acceptable substitute, such as a bystander's report or agreed statement of facts. See Ill. S. Ct. R. 323 (eff. July 1, 2017). "A court of review is limited to the record before it." *Webster v. Hartman*, 195 Ill. 2d 426, 436 (2001). In the absence of a complete record, the reviewing court must indulge in every reasonable presumption favorable to the trial court's judgment and we will presume that the trial court's judgment conformed with the law and had a sufficient factual basis. *Foutch*, 99 Ill. 2d at 391-92. "Any doubts which may arise from the incompleteness of the record," including the absence of relevant transcripts and exhibits, must be "resolved against the appellant." *Id.* at 392.

¶ 23    Work 6 was well aware of its failure to provide a complete record to this court as it argued throughout its opening brief that the report of proceedings and exhibits were not necessary for our resolution to this appeal. At no point did Work 6 attempt to supplement the record with the missing transcripts, exhibits, or any acceptable substitute, and thus, we censure Work 6's intentional disregard for our supreme court rules.

¶ 24    Work 6, instead, attempts to avoid the often fatal effect of an incomplete record and the application of *Foutch* by asserting that any facts included in its statement of facts are undisputed and citations to those undisputed facts will be to the parties' written closing arguments, as well as

those facts noted in the trial court's November 2, 2021, written order.[3] This suggestion is untenable. Work 6 cites no authority to support its position and we are unable to find any support for the proposition that facts recited in a party's brief can serve as a substitute for a report of proceedings. Rather, this court has stated on multiple occasions that the statement of facts in an appellate brief is not part of the record and cannot be considered by the reviewing court as evidence where the record was incomplete. See *Matter of McGaughey's Estate*, 60 Ill. App. 3d 150, 157 (1978) ("Appellate counsel cannot supplement the certified record by unsupported statements or allegations in their briefs or in oral argument."); *Strand v. United (Methodist) Church of Sheldon*, 12 Ill. App. 3d 917, 922 (1973) ("Matters or facts which are alluded to, or statements which are made in a brief in this court, which are entirely outside the record, cannot be considered by this reviewing court in disposition of the cause[.]"). Additionally, it is axiomatic that closing arguments are not evidence. See *Neuhengen v. Global Experience Specialists, Inc.*, 2018 IL App (1st) 160322, ¶ 157; Illinois Pattern Jury Instructions, Civil, Nos. 1.04(A)[14] and 1.01(C)[13] (May 2023). As such, we will not consider any alleged "undisputed" facts set forth in Work 6's statement of facts or the parties' written closing arguments as evidence.

¶ 25    We turn to consider whether Work 6's claim regarding the premium hanging baskets and tulips is purely a question of law or whether a factual inquiry is necessary for resolution of this appeal.

¶ 26    "The standard of review in a bench trial is whether the judgment is against the manifest weight of the evidence." *Chicago's Pizza, Inc. v. Chicago Pizza's Franchise Ltd. USA*, 384 Ill.

---

[3] We observe that, if the parties agreed on the undisputed facts, then the logical course of action would have been for Work 6 to file an agreed statement of facts, as is permitted under Illinois Supreme Court Rule 323 (eff. July 1, 2017).

App. 3d 849, 859 (2008). A judgment is against the manifest weight of the evidence only when the factual findings appear to be arbitrary, unreasonable, or not based on evidence, or when an opposite conclusion is apparent. *Vaughn v. City of Carbondale*, 2016 IL 119181, ¶ 23. Under this standard of review, it is imperative for the reviewing court to have the ability to review the evidence, including both testimony and exhibits, upon which the trial court based its factual findings. See *Benford v. Everett Commons, LLC*, 2014 IL App (1st) 131231, ¶ 32 (stating that without a complete record, the court did not know what evidence the trier of fact heard and had no basis for determining whether the factual findings were against the manifest weight of the evidence).

¶ 27    However, questions of law, including issues of statutory construction, are reviewed *de novo*. *Milledgeville Community Credit Union v. Corn*, 307 Ill. App. 3d 8, 12 (1999); *Citizens Opposing Pollution v. ExxonMobil Coal U.S.A.*, 2012 IL 111286, ¶ 23. Under *de novo* review, we are not required to defer to the trial court's reasoning, and thus, a transcript of proceedings and the exhibits introduced in a bench trial may be unnecessary. *Gonella Baking Co. v. Clara's Pasa di Casa, Ltd.*, 337 Ill. App. 3d 385, 388 (2003).

¶ 28    Ultimately, whether the record on appeal is sufficient to allow this court to address the merits of an appellant's claim of error turns on the particular error claimed. *In re Marriage of Abu-Hashim*, 2014 IL App (1st) 122997, ¶ 15.

¶ 29    Work 6 contends that "the issue of law concerns whether the UCC allows a party to make deductions from the amount it may owe to a seller following an acceptance of non-conforming goods." It asserts that this appeal involves the statutory construction of sections 2-607(3)(a), 2-714, and 2-717. Work 6 further argues that the construction necessary is "whether under the

circumstances presented by this case, whether Work 6 was entitled to seek a remedy for receipt of accepted but non-conforming goods by deducting claimed damages from the sums due to [VHG]."

¶ 30    Conversely, VHG asserts that "[w]hether the trial court erred in rendering judgment in favor of [VHG] and denying several of Work 6's claims for credits involves an inquiry that is inherently factual." Specifically, VHG argues that, because of the incomplete record, this court "has no way of knowing what evidence was presented to the circuit court upon the trial of the issues of whether VHG breached its warranties premised on the quality of plants delivered, whether Work 6 gave reasonable notice of non-conformance and whether and to what extent Work 6 sustained damages as a result of the alleged non-conformance."

¶ 31    We agree with VHG and, as we explain below, find that resolution of this appeal requires review of the evidence supporting the trial court's factual findings as well as application of the law, specifically the UCC, to the facts. Because our analysis inherently involves construing statutory provisions of the UCC, we set forth the principles of law governing statutory interpretation.

¶ 32    The fundamental rule of statutory construction is to give ascertain and give effect to the legislature's intent. *Landis v. Marc Realty, LLC*, 235 Ill. 2d 1, 6 (2009). The best indicator of intent is the language used in the statute, which must be accorded its plain and ordinary meaning. *Id.* at 6-7. Where the text of the statute is clear and unambiguous, we need not resort to canons of statutory construction. *Department of Transportation v. Singh*, 393 Ill. App. 3d 458, 465 (2009).

¶ 33    Work 6 argues that its claim for credits for the premium hanging baskets and tulips should have been analyzed under the UCC provisions governing a buyer's remedies after acceptance of non-conforming goods, specifically sections 2-607(3)(a), 2-714, and 2-717. As relevant here, those sections read together provide the following.

¶ 34 Under the UCC, once a buyer accepts goods, it is bound to pay the contracted price for them. 810 ILCS 5/2-607(1). However, acceptance does not prevent the buyer from pursuing other remedies for damages caused by non-conforming goods. Section 2-607 sets forth the effects of a buyer's acceptance of non-conforming goods. In particular, subsection (3)(a) provides that where goods have been accepted, "a buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy[.]" 810 ILCS 5/2-607(3)(a). The purpose of the notice is to give the seller the opportunity to cure the defect and minimize damages, protect his ability to investigate a breach and gather evidence, and to encourage negotiation and settlement. *Maldonado v. Creative Woodworking Concepts, Inc.*, 296 Ill. App. 3d 935, 939 (1998).

¶ 35 Sections 2-714 and 2-717 provide for the remedies which Work 6 seeks. Section 2-714 states that where the buyer has accepted goods and notified the seller as required in subsection (3) of section 2-607, the buyer may recover damages from any non-conformity of the goods where the loss resulted in the "ordinary course of events from the seller's breach as determined in any manner which is reasonable." 810 ILCS 5/2-714(1). Subsection (2) provides for the usual method of measuring the damages, and subsection (3) allows the buyer to recover for any incidental and consequential damages. 810 ILCS 5/2-714(2), (3). Under section 2-717, a buyer of goods is allowed to "deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract." 810 ILCS 5/2-717.

¶ 36 Therefore, pursuant to these provisions, "where the buyer has accepted the goods with knowledge of the breach or *** has failed to revoke the acceptance after discovery of the breach, but has given the seller timely notice, he is entitled to damages for the breach." *Murray v. Kleen Leen, Inc.*, 41 Ill. App. 3d 436, 442 (1976). Thus, we do not disagree with Work 6's assertion that

the UCC "allows a party to make deductions from the amount it may owe to a seller following an acceptance of non-conforming goods." However, that is not the end of the inquiry. As Work 6 accurately points out in its brief, the buyer is required to notify the seller of the non-conformity of the goods even when the goods have been accepted. This requirement is made clear in both section 2-607(3) and 2-714(1). As we explain below, our review of Work 6's satisfaction of the notice requirement is the major impediment to our review of this claimed error is impeded given the paucity of the record that has been provided to this court.

¶ 37    Before expounding upon the notice requirement, we deem it necessary to also set forth the UCC provisions governing a buyer's rejection or revocation of acceptance of non-conforming goods.

¶ 38    A buyer may reject goods that "fail in any respect to conform to the contract." 810 ILCS 5/2-601. The rejection of goods must occur within a reasonable time after delivery, and the rejection is "ineffective unless the buyer seasonably notifies the seller." 810 ILCS 5/2-602. Where a buyer does not validly reject goods, the goods are deemed accepted. 810 ILCS 5/2-606(b).

¶ 39    A buyer may revoke acceptance of the goods when a non-conformity substantially impairs the value of the previously accepted goods. 810 ILCS 5/2-608(1). The right to revocation occurs when the buyer accepts goods "on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured" or "without discovery of such non-conformity if [the buyer's] acceptance was reasonably induced by the difficulty of discovery before acceptance or by the seller's assurances." 810 ILCS 5/2-608(a), (b). Either way, revocation must occur within a reasonable time after the buyer discovers or should have discovered the ground for revocation. 810 ILCS 5/2-608(2). Proper revocation of acceptance, however, is also premised on the buyer's notification to the seller. 810 ILCS 5/2-608(2).

¶ 40    What becomes clear from a reading of the UCC's provisions governing a buyer's rejection, acceptance, and revocation of acceptance is that reasonable notice is a necessary predicate in all three scenarios, and without notice, a buyer will be barred from any remedy for damages caused by non-conformity of goods. See *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 495 (1996) (holding, in the context of a motion to dismiss, that "failure to allege sufficient notice is fatal to [the] plaintiffs' breach of warranty claims"); *Board of Education of City of Chicago v. A, C and S, Inc.*, 131 Ill. 2d 428, 462 (1989) (stating that failure to satisfy the requirement of notice is fatal to a cause of action for breach of warranty). Thus, regardless of the scenario under which we review Work 6's claims, we would ultimately need to review the trial court's factual findings on Work 6's notice to VHG of the non-conforming goods.

¶ 41    According to the UCC, "[w]hether a time for taking an action required *** is reasonable depends on the nature, purpose, and circumstances of the action." 810 ILCS 5/1-205(a). Moreover, "[a]n action is taken seasonably if it is taken at or within the time agreed or, if no time is agreed, at or within a reasonable time." 810 ILCS 5/1-205(b). "Whether sufficient notice has been provided is generally a question of fact to be determined based upon the particular circumstances of each case." *Maldonado*, 296 Ill. App. 3d at 940; see also *Al Maha Trading & Contracting Holding Co. v. W.S. Darley & Co.*, 936 F. Supp. 2d 933, 940 (N.D. Ill. 2013) (stating that the reasonableness of a party's actions is an issue for the trier of fact); *Murray*, 41 Ill. App. 3d at 442 (stating that the notification of breach of warranty "is ordinarily a question of fact, looking to all the circumstances of the case.").

¶ 42    Also relevant to a finding of reasonable notice is one of the few undisputed facts of this case, which is that VHG's invoices (or "delivery tickets") expressly stated that any claims regarding the goods were to be made within 24 hours after delivery. As such, it appears that the

contractually agreed upon terms mandated that a rejection of the goods or a request for credits after acceptance would only be seasonable if made within 24 hours. See 810 ILCS 5/1-205(b); 810 ILCS 5/1-302(a) (providing that "the effect of provisions of the [UCC] may be varied by agreement"). Of course, Work 6 also argues that the contractual 24-hour time period was "manifestly unreasonable" and instead Work 6's notice should be evaluated under the flexible standard of reasonableness set forth in section 1-205(a). We express no opinion as to whether the 24-hour time period was reasonable under the circumstances of this case, and, in point of fact, that is not the issue now before us. Even so, resolution of the factual dispute regarding whether Work 6's post-acceptance notice of non-conforming goods was either reasonable or fell within 24 hours requires our review of the evidence underpinning the trial court's finding of notice, such as the delivery of the plants, the plants' defects, the communications had between the parties after delivery, and the parties' conduct after delivery. None of this evidence is before this court.

¶ 43     In fact, Work 6 itself admits that "[t]he notice required by [s]ection 2-607(3)(a) must be based on the factual circumstances surrounding each case" and further that notice "must be within a reasonable period of time after the discovery of the breach or after the buyer should have discovered such breach." It is clear even from Work 6's own arguments that this claim cannot be resolved without a review of the evidence presented.

¶ 44     "In a bench trial, it is the function of the trial judge to weigh the evidence and make findings of fact." *Rolando v. Pierce*, 331 Ill. App. 3d 40, 47 (2002). Following a bench trial, the reviewing court will defer to the trial court's findings of fact unless they are contrary to the manifest weight of the evidence. *Staes and Scallan, P.C. v. Orlich*, 2012 IL App (1st) 112974, ¶ 35. Here, the court found that the 24-hour period for submitting claims as required on the invoices was standard in the trade for perishable plants, Work 6 failed to make a clear and unambiguous rejection within 24

hours of delivery of the premium hanging baskets and tulips, and Work 6 did not ask for credits for these non-conforming goods until months after they were received. Although the court did not expressly discuss "reasonable notice," the court found that Work 6's notice of non-conforming goods was insufficient. See *People v. Curtis*, 296 Ill. App. 3d 991, 1000 (1998) (stating that the trier of fact is not required to mention everything that contributed to its findings). However, we have no record for reviewing the basis for the trial court's determination. Without a sufficient record containing the transcripts and exhibits from the bench trial, we are constrained to presume that the court's finding was not against the manifest weight of the evidence. *Smolinski v. Votja*, 363 Ill. App. 3d 752, 757-78 (2006) (stating that, when presented with an insufficient record, we will indulge every reasonable presumption in favor of the judgment appealed from). As such, regardless of whether the court should have analyzed the claim as acceptance of non-conforming goods or rejection of non-conforming goods, its finding that Work 6 did not sufficiently provide notification to VHG of the non-conforming goods is presumed to be supported by sufficient facts. See *Tekansky v. Pearson*, 263 Ill. App. 3d 759, 764 (1994) (any doubts raised by missing evidence are to be resolved against the appellant); *In re Estate of Funk*, 221 Ill. 2d 30, 96 (2006) (trial court decision may be affirmed on any grounds).

¶ 45    Because we are hindered in our review of the court's factual finding of lack of reasonable notice, we also reject Work 6's argument that the time periods for reasonable notice must differ depending on whether the goods are rejected or accepted. Any legal conclusion of that argument would be futile as we cannot apply it to the evidence presented in this case. Moreover, there is nothing in the UCC that expressly makes such a differentiation.

¶ 46    Finally, in two of the cases to which Work 6 cites for support, *Al Maha Trading*, 936 F. Supp. 2d at 941, and *Custom Automated Machinery v. Penda Corp.*, 537 F. Supp. 77, 84 (N.D. Ill.

1982), the federal district court confirmed that reasonableness of notice is a question of fact, and as we have noted previously, Work 6 is seemingly aware that notice is a factual question as well. This begs the question, even if we held that the trial court should have considered Work 6's remedies for damages of accepted, non-conforming goods, what would Work 6 expect this court to then do? Should we remand to the trial court to make its own determination of reasonableness of notice after acceptance, even though all evidence relevant to that issue was previously presented? To do so would reward Work 6's blatant disregard of our supreme court rules, relegate our own role as a reviewing court to the trial court, and unnecessarily prolong litigation in this action. We decline.

¶ 47     Accordingly, because we have no report of proceedings or acceptable substitute in regards to the bench trial proceedings, we are unable to determine whether Work 6 was owed credits for the premium baskets and tulips, and thus, we presume that the trial court was correct in its ruling. See *Foutch*, 99 Ill. 2d at 391-92; *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 157 (2005) (concluding that it could not review the claimed error "to determine whether the trial court's factual findings were against the manifest weight of the evidence, or consider the legal effect of its factual findings").

¶ 48                                   B. Credits for Poinsettia Plants

¶ 49     Next, Work 6 claims that the trial court erred in calculating its damages for VHG's delivery of poinsettia plants and failed to comply with section 2-714 of the UCC (810 ILCS 5/2-714). In particular, Work 6 contends that the trial court "failed to consider the value of the received poinsettias and only the price to cover" and failed to account for incidental and consequential damages.

¶ 50    "In Illinois, the measure of damages is a question of fact to be decided by the trier of fact, and a reviewing court should not substitute its judgment for that of the trier of fact." *Hanson-Suminski v. Rohrman Midwest Motors, Inc.*, 386 Ill. App. 3d 585, 595 (2008). Following a bench trial, we will not disturb the trial court's finding of damages unless it is against the manifest weight of the evidence. *Doornbos Heating and Air Conditioning, Inc. v. James D. Schlenker, M.D., S.C.*, 403 Ill. App. 3d 468, 485 (2010).

¶ 51    Section 2-714(1) provides that "[w]here the buyer has accepted goods and given notification *** he may recover as damages for any non-conformity *** as determined in any manner which is reasonable." 810 ILCS 5/2-714(1). Subsection (2) states that "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." 810 ILCS 5/2-714(2). However, the comments to this section state that "[s]ubsection (2) describes the usual, standard and reasonable method of ascertaining damages *** but it is not intended as an exclusive measure." 810 ILCS 5/2-714, UCC Comment 3; see *Milledgeville*, 307 Ill. App. 3d at 13 (stating that this court may examine the relevant UCC comments in order to discern the legislature's intent). Thus, contrary to Work 6's assertion, the trial court was not required to utilize the method in subsection (2). Under the circumstances, we cannot say that the trial court's method in ascertaining damages is unreasonable, particularly where we have no evidence before us as to the non-conformity of the poinsettias, the original price, the selling price, or Work 6's conduct after delivery of the poinsettias.

¶ 52    We also find Work 6's argument that the trial court failed to account for incidental and consequential damages wholly without merit. Work 6 does not assert what those damages would

be and cites to nothing in the record to support this argument. Even so, as stated, damages are a fact-based determination and the complete absence of evidence in the record before this court hinders any determination in that regard.

¶ 53                                    C. Motion to Reconsider

¶ 54    Finally, Work 6 urges our reversal of the trial court's order denying its motion for reconsideration. In response, VHG argues that Work 6 merely repeated arguments presented in its closing argument and *Frank's Maintenance* is not applicable here.

¶ 55    We review the trial court's ruling on a motion for reconsideration for abuse of discretion. *In re Marriage of Wolff*, 355 Ill. App. 3d 403, 409 (2005). "The purpose of a motion for reconsideration is to apprise the trial court of newly discovered evidence, a change in the law, or errors in the court's earlier application of the law." *Farley Metals, Inc. v. Barber Colman Co.*, 269 Ill. App. 3d 104, 116 (1994).

¶ 56    We agree with VHG that Work 6's arguments in its motion for reconsideration consisted of arguments previously made in its written closing argument, and the trial court properly rejected those repetitive contentions. Work 6 did not provide any new evidence or a change in the law. The only new argument was that it was VHG's burden to repossess the non-conforming goods and Work 6's conduct after it advised VHG of the issues with the plants did not preclude a rejection or revocation of acceptance. Work 6 cited to *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.*, 86 Ill. App. 3d 980 (1980), for support of this argument. As to this particular contention, the trial court found the argument unavailing, stating that, although Work 6 could store, reship, or resell the goods without constituting acceptance, Work 6's post-delivery conduct in this particular instance was not consistent with rejection. The court also reiterated its prior ruling that Work 6 did not notify VHG of defects within a reasonable time and there was no proper rejection

of the goods. Additionally, because of the incomplete record, we must presume that the court's findings on these matters were supported by sufficient evidence and were in conformity with the law. See *Foutch*, 99 Ill. 2d at 391-92.

¶ 57 Moreover, it is clear to this court, even with the incomplete record, that *Frank's Maintenance* is inapposite. First, it did not involve perishable goods, and the court in *Frank's Maintenance* explicitly recognized that when perishable goods are involved, the buyer must comply with the seller's specific instructions following notification of non-conformity. 86 Ill. App. 3d at 986. Second, the terms of limitation for the buyer's remedies were not clearly set out in *Frank's Maintenance*, where they were provided on the back of order acknowledgment and the statement on the front directing the buyer to the conditions on the back was stamped over and rendered illegible. *Id.* at 983. Here, it is undisputed that the invoice for each purchase from VHG clearly stated that any claims must be made within 24 hours. For these reasons, we agree with the trial court that *Frank's Maintenance* does not provide a basis for reconsidering its judgment.

¶ 58 Accordingly, we find that the trial court did not abuse its discretion in denying Work 6's motion for reconsideration.

¶ 59                                III. CONCLUSION

¶ 60 For the reasons stated, we affirm the judgment of the circuit court.

¶ 61 Affirmed.